# EXHIBIT

# D



Attorneys at Law

Peter D. Friday*
Brian D. Cox
Paul G. Mayer Jr.
Beth Arnold Howell
*Admitted in West Virginia

1105 McFarland Road • Pittsburgh, PA 15216
T 412.561.4290 • F 412.561.4291 • Toll Free 1.800.482.0032

Offices:  Pittsburgh • Erie

June 3, 2014

Mark R. Hamilton, Esquire
Rebecca Sember Izsak, Esquire
Cipriani & Werner
650 Washington Road
Suite 700
Pittsburgh, Pennsylvania 15228

Garan, Inc.
200 Madison Avenue
4th Floor
New York, New York 10016

Garan Services, Corp.
200 Madison Avenue
4th Floor
New York, New York 10016

> Re:    Micjan vs. Wal-Mart Stores, Inc.
>          No.: GD-14-003946 (Allegheny County)

Dear Counsel & Parties of Record:

Enclosed please find a copy of the Complaint in Civil Action, which has been electronically filed with the Department of Court Records of Allegheny County.

Thank you.

Very truly yours,

Colleen A. Dees
Senior Paralegal
cdees@fridaylaw.com

CAD/mms
Enclosure

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

TRAVIS MICJAN and STEPHANIE
MICJAN, Co-Administrators of the
Estate of DYLAN MICJAN, a
deceased minor and in their own
right,

     Plaintiffs,

  vs.

WAL-MART STORES, INC.;
GARAN, INC. and GARAN
SERVICES CORP.,

     Defendants.

Civil Division

No.: GD14-003946

**COMPLAINT IN CIVIL ACTION**

Filed on behalf of:
Plaintiffs

Counsel of Record for this Party:

Peter D. Friday, Esquire
PA ID #48746

Friday & Cox LLC
1405 McFarland Road
Pittsburgh, Pennsylvania 15216
Telephone:  (412) 561-4290
Facsimile:  (412) 561-4291

<u>**JURY TRIAL DEMANDED**</u>

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

TRAVIS MICJAN and STEFANIE MICJAN,   CIVIL DIVISION
as Co-Administrators of the Estate of DYLAN
MICJAN, a deceased minor, and in their own   Docket No. :
right,

Plaintiffs,

vs.

WAL-MART STORES, INC.; GARAN, INC.;
and GARAN SERVICES CORP.,

Defendants.

## COMPLAINT IN CIVIL ACTION

Plaintiffs Travis Micjan and Stefanie Micjan, Co-Administrators of the Estate of Dylan

Micjan, a deceased minor, and in their own right, by and through their attorneys, Peter D. Friday,

Esquire, and Friday & Cox LLC, complain and allege as follows:

1.   Plaintiffs Travis Micjan and Stefanie Micjan are adult individuals, husband and

wife, who reside at Post Office Box 205, Elco, Pennsylvania 15434.

2.   Plaintiffs were the parents and natural guardians of minor Dylan Micjan

("decedent"), deceased, and are now the co-administrators of his estate.

3.   At all relevant times, decedent was a minor, born on December 14, 2011 and

resided with his parents.

4.   Defendant Wal-Mart Stores, Inc. ("Wal-Mart") is a corporation, registered to

conduct business in the Commonwealth of Pennsylvania, and at all relevant times was regularly

conducted business in Allegheny County, Pennsylvania. Wal-Mart maintains a principal place of

business located at 702 SW 8th Street, Bentonville, Arkansas 72716.

5.     Defendant Wal-Mart regularly does business in Allegheny County, with at least seven (7) retail store locations in Allegheny County, in addition to the business it transacts online via http://www.Walmart.com.

6.     Defendant Garan, Inc. is a corporation registered to conduct business in the Commonwealth of Pennsylvania, and at all relevant times regularly conducted business in Allegheny County, Pennsylvania. Defendant Garan, Inc. maintains a principal place of business at 200 Madison Avenue, 4th Floor, New York, New York 10016.

7.     Defendant Garan, Inc. regularly does business in Allegheny County, as it supplies, sells and/or distributes products to all Wal-Mart location(s) in Allegheny County, in addition to the business it transacts online via http://www.Walmart.com and through other retailers in Allegheny County.

8.     Defendant Garan Services Corp. is a subsidiary of defendant Garan, Inc., and is registered to conduct business in the Commonwealth of Pennsylvania, and at all relevant times regularly conducted business in Allegheny County, Pennsylvania. Defendant Garan Services Corp. maintains a principal place of business at 200 Madison Avenue, 4th Floor, New York, New York 10016.

9.     Defendant Garan Services Corp. regularly does business in Allegheny County, in addition to the business it transacts online via http://www.Walmart.com at other retailers in Allegheny County.

10.    Hereinafter, defendants Garan Services Corp. and Garan, Inc. will be collectively referred to as "Garan defendants."

11.   As more fully described herein, the incident giving rise to this suit occurred on March 25, 2012, when decedent Dylan Micjan died of asphyxia after rolling face into a crib bumper pad manufactured, marketed, distributed and sold by the defendants.

12.   At all relevant times, defendants manufactured, marketed, distributed and/or sold to the public a product line of crib bumper pads under the brand name "Garanimals" which is a registered trademark of defendant Garan Services Corp. "Garanimals" products are sold publicly exclusively by defendant Wal-Mart, both in their store locations and on their website.

13.   "Garanimals" crib bumper pad sets are marketed and sold with a stated purpose to "keep your baby safe from harm while providing a warm and inviting space to sleep."

14.   The intended use of crib bumper pads are to wrap around the bottom perimeter of a crib, purportedly to prevent babies from becoming trapped between the slats of the crib, and for cushioning the sides of the crib. From the consumer's standpoint, the intended and permissible use of crib bumper pads is evident from statements made directly or endorsed by defendants.

15.   However, crib bumper pads have been found to cause more injuries and deaths in infants than they prevent, and defendants knew or should have known these facts before they sold and supplied the at issue bumper pads to plaintiffs.

16.   The United States Consumer Product Safety Commission ("CPSC") has indicated that, between January 1, 1995 and December 31, 2005, there were at least twenty-seven (27) reported infant deaths caused by crib bumper pads, most of which caused specifically by suffocation. Because the CPSC does not receive all deaths reported in the United States, the reported deaths caused by crib bumper pads should be considered a minimum number.

17.   Prior to March 25, 2012, it was well-known to defendants that crib bumper pads presented particular hazards of serious injury to infants. In particular, defendants were aware that

according to industry and government sources, including the CPSC, many infants have died, and others have suffered serious injuries, as a result of crib bumper pads.

18.   On October 18, 2011, more than five (5) months before decedent suffocated to death, the American Academy of Pediatrics reported on their website that "[b]umper pads should not be used in cribs. There is no evidence that bumper pads prevent injuries, and there is a potential risk of suffocation, strangulation or entrapment."

19.   The American Academy of Pediatrics also reported in their official journal, "Pediatrics," that "because there is no evidence that bumper pads or similar products that attach to crib slats or sides prevent injury in young infants and because there is potential for suffocation, entrapment, and strangulation, these products are not recommended."

20.   "Pediatrics" based its recommendation on two peer-reviewed articles, one published in the Journal of Pediatrics in 2007, and the other published previously in "Pediatrics" in 2011.

21.   Health Canada, the CPSC, First Candle/National SIDS Alliance, and the National Institute of Child Health & Human Development have also all condemned crib bumper pad use.

22.   Effective June 21, 2013, Maryland banned the sale of crib bumper pads. This new policy was adopted by regulation of the State Department of Health and Mental Hygiene in November, 2012 following 18 months of expert and public consultation. Therefore, this nationally publicized, statewide investigation began in or around May, 2011 – 10 months before decedent suffocated to death on his crib bumper pad.

23.   Crib bumper pads offer little or no protection from a baby being injured by the crib. Risks posed by crib bumper pads vastly outweigh the possible benefits provided by such padding.

24.    Despite the available information regarding the danger of crib bumper pads, with little benefit, if any, defendants continued to manufacture, market, distribute and sell "Garanimals" crib bumper pad sets to the public, including plaintiffs.

25.    Defendants had more than transitory, fleeting or anecdotal notice of the risks posed by crib bumper pads. On the contrary, they had known about these dangers for years, and they were widely known through the industry.

26.    Defendants had an actual appreciation of the nature of the risk posed to infants by such products, yet failed to inform the public of that risk and continued to manufacture, market, distribute and sell "Garanimals" crib bumper pad sets to the public.

27.    Defendants knew that the extent of injury posed by crib bumper pads included death, yet favored their own pecuniary gain over the health and safety of the public.

28.    Defendants had an actual appreciation that the frequency of such deaths posed by crib bumper pads was very significant, to wit, at least 27 reported deaths of infants.

29.    Defendants specifically encouraged customers to use their crib bumper pad sets, despite specific knowledge that they could cause death or serious injury in infants. However, defendants were aware of the potential for lost profits if they were to remove said products from the market.

30.    Defendants were specifically aware that the persons most at risk for injury or death by their crib bumper pad sets were infant children.

31.    Defendants knowingly refused to perform any testing or safety analysis on their crib bumper pad sets to assure that they were safe for use by infants, to wit, they would not cause suffocation.

32.   Despite all of the aforesaid knowledge and actual appreciation of the danger involved, defendants intentionally, knowingly, and recklessly failed to issue a product recall and/or remove the product from the market. Defendants' blatant disregard for the safety of purchasers of the product continues up until the present time.

33.   On or about November 15, 2011, plaintiffs purchased the subject "Garanimals" crib bumper pad set at a Wal-Mart retail location in the Commonwealth of Virginia.

34.   At the time the subject crib bumper pad set left defendants' possession or control, and when it arrived at the plaintiffs' household on or about November 15, 2011, it did not include any warnings against suffocation.

35.   Thereafter, plaintiffs installed the subject crib bumper pad set in decedent's crib as directed by the defendants' instructions, which was the intended use of the product that had been advertised, described and/or otherwise endorsed by defendants. Among the intended users of the subject crib bumper bad set was the plaintiffs' three-month old infant, decedent Dylan Micjan.

36.   The plaintiffs provided decedent with a firm crib mattress, covered by a fitted sheet as recommended and provided by defendants.

37.   The only warnings included with the subject crib bumper pad set stated "[t]o prevent entanglement or strangulation, position ties to outside of crib and be sure they are secure. Remove bumper when child can sit up unaided or can pull to a standing position," and "[p]revent possible strangulation or entanglement. Never use crib sheet unless it fits securely on crib mattress."

38.   Also included with the subject crib bumper pad set was a pamphlet entitled "Naptime to Nighttime" which had instructions for Infant Bedding Safety and Crib Safety, but

did not include any warnings against the use of crib bumper pads because of their dangerous propensity to cause, *inter alia*, suffocation.

39.   On the evening of March 24, 2012, plaintiffs put decedent to bed in his crib, at their home in Virginia which had the subject crib bumper pad set, and a firm mattress with a tight fitting crib sheet that was also included in the crib bumper pad set.  Decedent was behaving normally when he was put to bed, and was considered by plaintiffs to be a good sleeper with a steady sleep cycle.

40.   The door to decedent's bedroom was always left open.

41.   Between 4:00 and 5:00 a.m. on March 25, 2012, plaintiff Stefanie Micjan fed the decedent, who was still behaving normally.

42.   At or about 11:30 a.m. on March 25, 2012, plaintiff Travis Micjan checked on decedent and found him to be unresponsive in his crib with his faced pressed up against the subject crib bumper pad.

43.   Decedent was pronounced dead at the scene.  Wendy M. Gunther, M.D., Medical Examiner for the Commonwealth of Virginia, performed the autopsy and determined that decedent's cause of death was asphyxia due to his face rolling into the subject crib bumper pad.

44.   As a direct and proximate result of the negligence, carelessness and recklessness of defendants, decedent sustained the following injuries:

      a)   Asphyxia;

      b)   Death;

      c)   Nervousness, confusion, emotional tension, fear and anxiety;

      d)   Severe and persistent pain; and

      e)   Other injuries to be proven at trial.

45.   As a direct and proximate result of the negligence, carelessness and recklessness of defendants, decedent suffered the following damages:

    a)   He was caused great pain, suffering, mental anguish, and emotional and psychological trauma, resulting in his death;

    b)   He has been and will be forever deprived of his general health, strength and vitality and will never again be able to enjoy the pleasures of life he enjoyed; and

    c)   His earning capacity has been permanently impaired.

**COUNT I**
*Plaintiffs v. Defendant Wal-Mart*
**Survival Action – Strict Liability: Failure to Warn**

46.   All preceding paragraphs of this complaint are incorporated herein by reference.

47.   At all relevant times, defendant Wal-Mart was engaged in the business of marketing, distribution and sale of the subject crib bumper pad set to the ultimate users and consumers of the product.

48.   At all relevant times, the subject crib bumper pad set involved in this accident was expected to, and did, reach plaintiffs and decedent without substantial change in the condition in which it was sold, and it remained unchanged up until March 25, 2012.

49.   As it was supplied to plaintiffs, the subject crib bumper pad set was in a defective condition, unreasonably dangerous and unsafe for its intended users and uses.

50.   The risks and dangers associated with the subject crib bumper pad set were widely known and knowable to defendant Wal-Mart at the time of sale to plaintiffs, and at the time of decedent's death.

51. Defendant Wal-Mart failed to provide warnings of such risks and dangers to plaintiffs and decedent as described herein and said risks were not known or knowable to plaintiffs at the time of decedent's death. Ordinary consumers would not have recognized the potential risks and dangers the subject crib bumper system posed because its uses were specifically promoted and endorsed as being safe for use in the cribs of infants, while the nature and prevalence of such risks were either downplayed or concealed from consumers.

52. The subject crib bumper pad set was used by plaintiffs and decedent in the manner directed, and therefore, a way reasonably foreseeable to defendant Wal-Mart.

53. Defendant Wal-Mart failed to supply plaintiffs with proper warnings and instructions to assure that incidents of suffocation resulting in personal injury or death would not occur, and to alert users and consumers of the danger posed to infants by the subject crib bumper set.

54. Defendant Wal-Mart had a subjective appreciation of the danger posed to infants by the subject crib bumper set, yet they knowingly failed to reveal, or concealed, such dangers, and plaintiffs are therefore entitled to punitive damages to deter defendant Wal-Mart and others from engaging in similar conduct in the future. Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of defendant Wal-Mart.

WHEREFORE, plaintiffs demand judgment for compensatory and punitive damages against defendant Wal-Mart in an amount in excess of the jurisdictional limits of compulsory arbitration, together with court costs, interest and such other and further relief as this Honorable Court may deem just and equitable.

**COUNT II**
*Plaintiffs v. Defendant Wal-Mart*
**Survival Action – Strict Liability: Defective Design**

55.    All preceding paragraphs of this complaint are hereby incorporated by reference.

56.    The subject crib bumper pad set was manufactured, supplied and/or distributed for sale by defendant Wal-Mart, and was placed into the stream of commerce in a defective and unreasonably dangerous condition by defendant Wal-Mart, in that the foreseeable risks exceeded the benefits associated with its design or formulation.

57.    As a result of the defective, unreasonably dangerous condition of the subject crib bumper pad set manufactured and/or supplied by defendant Wal-Mart, decedent was caused to suffocate to death.

58.    Defendant Wal-Mart acted with conscious and deliberate disregard of the foreseeable harm caused by the subject crib bumper pad set.

59.    Defendant Wal-Mart thereby acted with fraud, malice oppression and a conscious disregard for plaintiffs, decedent, and the general public's safety.

60.    Accordingly, plaintiffs request that this Honorable Court award punitive damages for the sake of example and for the purpose of punishing defendant Wal-Mart for its conduct, in an amount sufficiently large to be an example to others and deter defendants and others from engaging in similar conduct in the future.  The aforesaid wrongful conduct was done with advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agent of defendant Wal-Mart.

WHEREFORE, plaintiffs demand judgment for compensatory and punitive damages against defendant Wal-Mart in an amount in excess of the jurisdictional limits of compulsory arbitration, together with court costs, interest and such other and further relief as this Honorable Court may deem just and equitable.

**COUNT III**
*Plaintiffs v. Defendant Wal-Mart*
**Survival Action – Strict Liability: Manufacturing Defect**

61.     All preceding paragraphs of this complaint are hereby incorporated by reference.

62.     The subject crib bumper pad set was unreasonably dangerous and not reasonably safe for its intended use and was defective as a matter of law with respect to its manufacture.

63.     As a direct and proximate result of the product's aforementioned defects, plaintiffs and decedent were caused, and in the future will be caused, to suffer from the severe personal injuries and damages discussed herein.

64.     Defendant Wal-Mart is strictly liable to plaintiffs for manufacturing, marketing, labeling, packaging and selling a defectively manufactured product.

65.     Defendant Wal-Mart acted with conscious and deliberate disregard of the foreseeable harm caused by the subject crib bumper pad set as a result of its defective manufacture.

66.     The aforesaid defects of the subject crib bumper pad set were the legal cause of the death of decedent, and the damages suffered by plaintiffs as set forth above.

WHEREFORE, plaintiffs demand judgment for compensatory and punitive damages against defendant Wal-Mart in an amount in excess of the jurisdictional limits of compulsory arbitration, together with court costs, interest and such other and further relief as this Honorable Court may deem just and equitable.

**COUNT IV**
*Plaintiffs v. Defendant Wal-Mart*
**Survival Action -- Negligence**

67.     All preceding paragraphs of this complaint are hereby incorporated by reference.

68.     Defendant Wal-Mart and its representatives were manufacturers, designers,

marketers, and/or distributors of the subject crib bumper pad set. At all times relevant, defendant

Wal-Mart had a duty to properly manufacture, compound, test, inspect, package, label, distribute,

market, research, examine, maintain, supply, provide proper warnings for, prepare for use and

sell the subject crib bumper pad set.

69.     Defendants so negligently and carelessly manufactured, compounded, tested,

failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended,

displayed, sold, examined, failed to examine, marketed, researched and supplied the subject crib

bumper pad set, that it was dangerous and unsafe for the use and purpose for which it was

intended.

70.     Plaintiffs' and decedent's injuries were a direct and proximate result of defendant

Wal-Mart's negligence, carelessness and recklessness with respect to the subject crib bumper pad

set in the following particulars:

> a)     In blatantly failing to use due care in designing, marketing and selling a
>        defective product;
>
> b)     In failing to provide a crib bumper pad set whose benefits outweigh the
>        dangers;
>
> c)     In carelessly promoting, advertising and selling to the general public, the
>        subject crib bumper pad set as an adequate and safe part of an infant's
>        crib;
>
> d)     In carelessly soliciting and endorsing the use of the subject crib bumper
>        pad set inside an infant's crib;

e)      In failing to test its adequacy for breathability such that an infant's lungs would be able to draw sufficient air through the product if his or her face were pressed up against it;

f)      In failing to properly warn or instruct purchasers of the product of the specific danger of suffocation related its use;

g)      In failing to adequately test, examine or inspect the subject crib bumper pad set when defendant Wal-Mart knew, or should have known, that death could result from suffocation;

h)      In failing to comply with all applicable industry safety standards for crib contents or bumper pads; and

i)      In misrepresenting to plaintiffs that the subject crib bumper pad set was safe and could be used in an infant's crib.

WHEREFORE, plaintiffs demand judgment for compensatory and punitive damages against defendant Wal-Mart in an amount in excess of the jurisdictional limits of compulsory arbitration, together with court costs, interest and such other and further relief as this Honorable Court may deem just and equitable.

### COUNT V
*Plaintiffs v. Defendant Wal-Mart*
**Survival Action -- Breach of Express Warranty**

71.     All preceding paragraphs of this complaint are hereby incorporated by reference.

72.     Defendant Wal-Mart expressly warranted to plaintiffs and the general public that the defective subject crib bumper pad set was safe, effective, fit and proper for its intended use.

73.     Plaintiffs reasonably relied upon the skill and judgment of defendant Wal-Mart and upon said express warranty, in using the aforesaid product.  The warranty and representations were untrue in that the product caused plaintiffs' decedent to suffocate to death, and was therefore unsafe and unsuited for the use for which it was intended.

74.     Defendant Wal-Mart had ample and sufficient notice of the breach of said warranty, as soon as the true nature of the product, and the fact that the warranty and representations were false, were ascertained.

75.     As a result of defendant Wal-Mart's breach of express warranty, plaintiffs and their decedent have sustained injuries and damages as described herein, and are therefore entitled to compensatory damages.

WHEREFORE, plaintiffs demand judgment for compensatory damages against defendant Wal-Mart in an amount in excess of the jurisdictional limits of compulsory arbitration, together with court costs, interest and such other and further relief as this Honorable Court may deem just and equitable.

## COUNT VI
*Plaintiffs v. Defendant Wal-Mart*
### Survival Action – Breach of Implied Warranty

76.     All preceding paragraphs of this complaint are hereby incorporated by reference.

77.     Defendant Wal-Mart distributed and sold the subject crib bumper pad set, and was, with respect to that product, a merchant within the meaning of Article 2 of the Pennsylvania Uniform Commercial Code.

78.     Defendant Wal-Mart impliedly warranted that the subject crib bumper pad set, which they promoted, distributed and sold to plaintiffs, was merchantable, fit and safe for ordinary use.

79.     Defendant Wal-Mart further impliedly warranted that the subject crib bumper pad set was safe for use in an infant's crib.

80.     In purchasing the subject crib bumper pad set, plaintiffs relied upon the judgment of defendant Wal-Mart that it was fit for its intended purpose.

81.    Defendant Wal-Mart's subject crib bumper pad set was defective, unmerchantable, and unfit for ordinary use when sold, and unfit for the particular purpose for which it was sold, and caused decedent to suffocate to death, resulting in injuries and damages to him and plaintiffs.

82.    Therefore, defendant Wal-Mart breached the implied warranties of merchantability and fitness for a particular purpose when it crib bumper pad set was sold to plaintiff, in that the product was defective and caused decedent to suffocate to death, and otherwise failed to function as represented and intended.

WHEREFORE, plaintiffs demand judgment for compensatory damages against defendant Wal-Mart in an amount in excess of the jurisdictional limits of compulsory arbitration, together with court costs, interest and such other and further relief as this Honorable Court may deem just and equitable.

## COUNT VII
*Plaintiffs v. Defendant Wal-Mart*
**Survival Action – Fraud by Concealment**

83.    All preceding paragraphs of this complaint are hereby incorporated by reference.

84.    At all times relevant, defendant Wal-Mart had the duty and obligation to disclose to plaintiffs the true facts concerning the subject crib bumper pad set, that is, that said product was dangerous and defective, lacking efficacy for its purported use and lacking safety in normal use, and how likely it was to cause serious consequences to users including death. Defendant Wal-Mart made the affirmative representations as set forth above to plaintiff prior to the date plaintiffs purchased the product, while concealing material facts.

85.    At all times relevant, defendant Wal-Mart willfully and maliciously concealed facts as set forth above from plaintiffs, with the intent to defraud as herein alleged.

86.    At all times relevant, plaintiffs were unaware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not have reasonably relied upon said representations of safety and efficacy and utilized the subject crib bumper pad set. Defendant Wal-Mart's representations were a substantial factor in plaintiffs utilizing the subject crib bumper bad set for their infant son.

87.    As a result of the concealment of the facts set forth above, plaintiffs and their decedent sustained injuries and damages as described herein.

88.    Defendant Wal-Mart acted with oppression, fraud, and malice and plaintiffs are therefore entitled to punitive damages in an amount reasonably related to plaintiffs' and decedent's actual damages, and to defendants Wal-Mart's wealth, and sufficiently large to be an example to others, and to deter defendants and others from engaging in similar conduct in the future.

WHEREFORE, plaintiff demands judgment for compensatory and punitive damages against defendant Wal-Mart in an amount in excess of the jurisdictional limits of compulsory arbitration, together with court costs, interest and such other and further relief as this Honorable Court may deem just and equitable.

### COUNT VIII
*Plaintiffs v. Defendant Wal-Mart*
**Survival Action – Negligent Misrepresentation**

89.    All preceding paragraphs of this complaint are hereby incorporated by reference.

90.    At all relevant times, defendant Wal-Mart represented to plaintiffs that the subject crib bumper pad set was safe to use in an infant's crib, knowing that the product was defective and capable of causing the injuries and death described herein.

91.     Defendants made the aforesaid representations with no reasonable ground for believing them to be true when a multitude of public data showed the subject crib bumper pad set to be defective and dangerous when used in the intended manner.

92.     The aforesaid representations were made to plaintiffs prior to the date they purchased the product with the intent that plaintiffs rely upon such misrepresentations about the safety of the subject crib bumper pad set.

93.     Plaintiffs did reasonably rely upon such misrepresentations about the safety of the subject crib bumper pad set.

94.     The representations defendant Wal-Mart made to plaintiff were false, and thereby caused the injuries and damages to plaintiffs and their decedent as described above.

WHEREFORE, plaintiffs demand judgment for compensatory and punitive damages against defendant in an amount in excess of the jurisdictional limits of compulsory arbitration, together with court costs, interest and such other and further relief as this Honorable Court may deem just and equitable.

**COUNT IX**
*Plaintiffs v. Defendant Wal-Mart*
**Survival Action – Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law**

95.     All preceding paragraphs of this complaint are hereby incorporated by reference.

96.     By reason of the conduct as alleged herein, defendant Wal-Mart violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1, *et seq.*, by engaging in fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

97.     Defendant Wal-Mart knowingly and intentionally induced plaintiffs to purchase the subject crib bumper pad set through the use of false and/or misleading advertising, representations and statements.

98.     The subject crib bumper pad set failed to perform as represented and advertised, and in fact was unsafe.

99.     Defendant Wal-Mart induced plaintiffs, through the use of false and/or misleading advertising, representations, and statements, as described above to use and/or install the subject crib bumper pad set in decedent's crib, which defendants manufactured and/or distributed and sold, all in violation of the UTPCPL which proscribes, among other things:

   a)   Engaging in unfair trade practices as defined in the statute by making false and misleading oral and written statements that have the capacity, tendency or effect of deceiving or misleading consumers;

   b)   Engaging in unfair trade practices as defined in the statute by making representations that its' crib bumper pad set had an approval, characteristic, use or benefit which it did not have, including but not limited to statements concerning the health consequences of the use of the subject crib bumper pad set;

   c)   Engaging in unfair trade practices as defined in the statute by failing to state material facts, the omission of which deceive or tend to deceive, including but not limited to, facts relating to the health consequences of the use of the subject crib bumper pad set; and

   d)   Engaging in unfair trade practices as defined in the statute through deception, fraud, misrepresentation, and knowing concealment, suppression and omission of material facts with the intent that consumers rely upon the same in connection with the use and continued use of the subject crib bumper pad set.

100.    As a direct and proximate result of defendant Wal-Mart's statutory violations, plaintiffs installed the subject crib bumper pad set into decedent's crib, which plaintiffs would not have done had defendant Wal-Mart not issued false and/or misleading advertising, representations and statements.

101.    By reason of such violations and pursuant to the laws and regulations of this state, plaintiffs are entitled to recover all of the monies paid for the products; to be compensated for the cost of medical care arising out of the use of subject crib bumper pad set; together with any and all actual damages recoverable under the law including, but not limited to, past medical expenses, past wage loss, past pain, suffering, disability and emotional distress.

102.    Defendant Wal-Mart markets to the public in a manner calculated to increase sales of the subject crib bumper pad set and resultant profits from the product at the expense of, and in conscious disregard for, the health and safety of plaintiffs, decedent, and other users alike, as safer and more effective alternative products existed.

103.    The conduct of defendant Wal-Mart was undertaken consciously and with notice, which evinces a willful, wanton and conscious disregard for the rights, health and safety of the public, including plaintiffs and decedent, who would be expected to be induced by that conduct, to use the subject crib bumper pad set leading to the suffocation death of decedent.

104.    As a direct and proximate result of the wrongful acts of defendant Wal-Mart, plaintiffs and decedent have suffered the injuries and damages as discussed above.

WHEREFORE, plaintiffs demand judgment for compensatory and punitive damages against defendant in an amount in excess of the jurisdictional limits of compulsory arbitration, together with court costs, interest and such other and further relief as this Honorable Court may deem just and equitable.

**COUNT X**
*Plaintiffs v. Garan Defendants*
**Survival Action – Strict Liability: Failure to Warn**

105.    All preceding paragraphs of this complaint are incorporated herein by reference.

106.    At all relevant times, Garan defendants were engaged in the business of designing, manufacturing, marketing, distribution and sale of the subject crib bumper pad set to the ultimate users and consumers of the product.

107.    At all relevant times, the subject crib bumper pad set involved in this accident was expected to, and did, reach plaintiffs and decedent without substantial change in the condition in which it was sold, and it remained unchanged up until March 25, 2012.

108.    As it was supplied to plaintiffs, the subject crib bumper pad set was in a defective condition, unreasonably dangerous and unsafe for its intended uses.

109.    The risks and dangers associated with the subject crib bumper pad set were widely known and knowable to Garan defendants at the time of sale to plaintiffs, and at the time of decedent's death.

110.    Garan defendants failed to provide warnings of such risks and dangers to plaintiffs and decedent as described herein and said risks were not known or knowable to plaintiffs at the time of decedent's death. Ordinary consumers would not have recognized the potential risks and dangers the subject crib bumper system posed because its uses were specifically promoted and endorsed as being safe for use in the cribs of infants, while the nature and prevalence of such risks were either downplayed or concealed from consumers.

111.    The subject crib bumper pad set was used by plaintiffs and decedent in the manner directed, and therefore, a way reasonably foreseeable to Garan defendants.

112.     Garan defendants failed to supply plaintiffs with proper warnings and instructions

to assure that incidents of suffocation resulting in personal injury or death would not occur, and

to alert users and consumers of the danger posed to infants by the subject crib bumper set.

113.     Garan defendants had a subjective appreciation of the danger posed to infants by

the subject crib bumper set, yet they knowingly failed to reveal, or concealed, such dangers, and

plaintiffs are therefore entitled to punitive damages to deter Garan defendants and others from

engaging in similar conduct in the future.  Said wrongful conduct was done with advance

knowledge, authorization and/or ratification of an officer, director and/or managing agent of

Garan defendants.

WHEREFORE, plaintiffs demand judgment for compensatory and punitive damages

against Garan defendants in an amount in excess of the jurisdictional limits of compulsory

arbitration, together with court costs, interest and such other and further relief as this Honorable

Court may deem just and equitable.

### COUNT XI
*Plaintiffs v. Garan Defendants*
**Survival Action – Strict Liability: Defective Design**

114.     All preceding paragraphs of this complaint are hereby incorporated by reference.

115.     The subject crib bumper pad set was manufactured, supplied and/or distributed

for sale by Garan defendants, and was placed into the stream of commerce in a defective and

unreasonably dangerous condition by Garan defendants, in that the foreseeable risks exceeded the

benefits associated with its design or formulation.

116.     As a result of the defective, unreasonably dangerous condition of the subject

crib bumper pad set manufactured and/or supplied by Garan defendants, decedent was caused to

suffocate to death.

117.    Garan defendants acted with conscious and deliberate disregard of the foreseeable harm caused by the subject crib bumper pad set.

118.    Garan defendants thereby acted with fraud, malice oppression and a conscious disregard for plaintiffs, decedent, and the general public's safety.

119.    Accordingly, plaintiffs request that this Honorable Court award punitive damages for the sake of example and for the purpose of punishing Garan defendants for their conduct, in an amount sufficiently large to be an example to others and deter defendants and others from engaging in similar conduct in the future. The aforesaid wrongful conduct was done with advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agent of Garan defendants.

WHEREFORE, plaintiffs demand judgment for compensatory and punitive damages against Garan defendants in an amount in excess of the jurisdictional limits of compulsory arbitration, together with court costs, interest and such other and further relief as this Honorable Court may deem just and equitable.

### COUNT XII
*Plaintiffs v. Garan Defendants*
**Survival Action – Strict Liability: Manufacturing Defect**

120.    All preceding paragraphs of this complaint are hereby incorporated by reference.

121.    Garan defendants were responsible for the manufacture of the subject crib bumper pad set.

122.    The subject crib bumper pad set was unreasonably dangerous and not reasonably safe for its intended use and was defective as a matter of law with respect to its manufacture.

123.   As a direct and proximate result of the product's aforementioned defects, plaintiffs and decedent were caused, and in the future will be caused, to suffer from the severe personal injuries and damages discussed herein.

124.   Garan defendants are strictly liable to plaintiffs for manufacturing, marketing, labeling, packaging and selling a defectively manufactured product.

125.   Garan defendants acted with conscious and deliberate disregard of the foreseeable harm caused by the subject crib bumper pad set as a result of its defective manufacture.

126.   The aforesaid defects of the subject crib bumper pad set were the legal cause of the death of decedent, and the damages suffered by plaintiffs as set forth above.

WHEREFORE, plaintiffs demand judgment for compensatory and punitive damages against Garan defendants in an amount in excess of the jurisdictional limits of compulsory arbitration, together with court costs, interest and such other and further relief as this Honorable Court may deem just and equitable.

## COUNT XIII
*Plaintiffs v. Garan Defendants*
**Survival Action – Negligence**

127.   All preceding paragraphs of this complaint are hereby incorporated by reference.

128.   Garan defendants and theirs representatives were manufacturers, designers, marketers, and/or distributors of the subject crib bumper pad set. At all times relevant, Garan defendants had a duty to properly manufacture, compound, test, inspect, package, label, distribute, market, research, examine, maintain, supply, provide proper warnings for, prepare for use and sell the subject crib bumper pad set.

129.   Garan defendants so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended,

displayed, sold, examined, failed to examine, marketed, researched and supplied the subject crib bumper pad set, that it was dangerous and unsafe for the use and purpose for which it was intended.

130.    Plaintiffs' and decedent's injuries and damages were a direct and proximate result of the Garan defendants' negligence, carelessness and recklessness with respect to the subject crib bumper pad set in the following particulars:

a)    In blatantly failing to use due care in designing, marketing and selling a defective product;

b)    In failing to provide a crib bumper pad set whose benefits outweigh the dangers;

c)    In carelessly promoting, advertising and selling to the general public, the subject crib bumper pad set as an adequate and safe part of an infant's crib;

d)    In carelessly soliciting and endorsing the use of the subject crib bumper pad set inside an infant's crib;

e)    In failing to test its adequacy for breathability such that an infant's lungs would be able to draw sufficient air through the product if his or her face were pressed up against it;

f)    In failing to properly warn or instruct purchasers of the product of the specific danger of suffocation related its use;

g)    In failing to adequately test, examine or inspect the subject crib bumper pad set when Garan defendants knew, or should have known, that   death could result from suffocation;

h)    In failing to comply with all applicable industry safety standards for crib contents or bumper pads; and

i)    In misrepresenting to plaintiffs that the subject crib bumper pad set was safe and could be used in an infant's crib.

WHEREFORE, plaintiffs demand judgment for compensatory and punitive damages against Garan defendants in an amount in excess of the jurisdictional limits of compulsory arbitration, together with court costs, interest and such other and further relief as this Honorable Court may deem just and equitable.

## COUNT XIV
*Plaintiffs v. Garan Defendants*
**Survival Action -- Breach of Express Warranty**

131.    All preceding paragraphs of this complaint are hereby incorporated by reference.

132.    Garan defendants expressly warranted to plaintiffs and the general public that the defective subject crib bumper pad set was safe, effective, fit and proper for its intended use.

133.    Plaintiffs reasonably relied upon the skill and judgment of the Garan defendants and upon said express warranty, in using the aforesaid product. The warranty and representations were untrue in that the product caused plaintiffs' decedent to suffocate to death, and was therefore unsafe and unsuited for the use for which it was intended.

134.    Garan defendants had ample and sufficient notice of the breach of said warranty, as soon as the true nature of the product, and the fact that the warranty and representations were false, were ascertained.

135.    As a result of Garan defendants' breach of express warranty, plaintiffs and their decedent have sustained injuries and damages as described herein, and are therefore entitled to compensatory damages.

WHEREFORE, plaintiffs demand judgment for compensatory damages against Garan defendants in an amount in excess of the jurisdictional limits of compulsory arbitration, together with court costs, interest and such other and further relief as this Honorable Court may deem just and equitable.

## COUNT XV
*Plaintiffs v. Garan Defendants*
**Survival Action – Breach of Implied Warranty**

136.   All preceding paragraphs of this complaint are hereby incorporated by reference.

137.   Garan defendants manufactured, designed, distributed and sold the subject crib bumper pad set, and were, with respect to that product, merchants within the meaning of Article 2 of the Pennsylvania Uniform Commercial Code.

138.   Garan defendants impliedly warranted that the subject crib bumper pad set, which they promoted, distributed and sold to plaintiffs, was merchantable, fit and safe for ordinary use.

139.   Garan defendants further impliedly warranted that the subject crib bumper pad set was safe for use in an infant's crib.

140.   In purchasing the subject crib bumper pad set, plaintiffs relied upon the judgment of the Garan defendants that it was fit for its intended purpose.

141.   The Garan defendants' subject crib bumper pad set was defective, unmerchantable, and unfit for ordinary use when sold, and unfit for the particular purpose for which it was sold, and caused decedent to suffocate to death, resulting in injuries and damages to him and plaintiffs.

142.   Therefore, the Garan defendants breached the implied warranties of merchantability and fitness for a particular purpose when it crib bumper pad set was sold to plaintiff, in that the product was defective and caused decedent to suffocate to death, and otherwise failed to function as represented and intended.

WHEREFORE, plaintiffs demand judgment for compensatory damages against the Garan defendants in an amount in excess of the jurisdictional limits of compulsory arbitration, together with court costs, interest and such other and further relief as this Honorable Court may deem just and equitable.

**COUNT XVI**
*Plaintiffs v. Garan Defendants*
**Survival Action – Fraud by Concealment**

143.    All preceding paragraphs of this complaint are hereby incorporated by reference.

144.    At all times relevant, Garan defendants had the duty and obligation to disclose to plaintiffs the true facts concerning the subject crib bumper pad set, that is, that said product was dangerous and defective, lacking efficacy for its purported use an lacking safety in normal use, and how likely it was to cause serious consequences to users including death. Garan defendants made the affirmative representations as set forth above to plaintiff prior to the date plaintiffs purchased the product, while concealing material facts.

145.    At all times relevant, Garan defendants willfully and maliciously concealed facts as set forth above from plaintiffs, with the intent to defraud as herein alleged.

146.    At all times relevant, plaintiffs were unaware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not have reasonably relied upon said representations of safety and efficacy and utilized the subject crib bumper pad set. Garan defendants' representations were a substantial factor in plaintiffs utilizing the subject crib bumper bad set for their infant son.

147.    As a result of the concealment of the facts set forth above, plaintiffs and their decedent sustained injuries and damages as described herein.

148.   The Garan defendants acted with oppression, fraud, and malice and plaintiffs are therefore entitled to punitive damages in an amount reasonably related to plaintiffs' and decedent's actual damages, and to Garan defendants' wealth, and sufficiently large to be an example to others, and to deter defendants and others from engaging in similar conduct in the future.

WHEREFORE, plaintiff demands judgment for compensatory and punitive damages against Garan defendants in an amount in excess of the jurisdictional limits of compulsory arbitration, together with court costs, interest and such other and further relief as this Honorable Court may deem just and equitable.

## COUNT XVII
*Plaintiffs v. Garan defendants*
**Survival Action – Negligent Misrepresentation**

149.   All preceding paragraphs of this complaint are hereby incorporated by reference.

150.   At all relevant times, Garan defendants represented to plaintiffs that the subject crib bumper pad set was safe to use in an infant's crib, knowing that the product was defective and capable of causing the injuries and death described herein.

151.   Defendants made the aforesaid representations with no reasonable ground for believing them to be true when a multitude of public data showed the subject crib bumper pad set to be defective and dangerous when used in the intended manner.

152.   The aforesaid representations were made to plaintiffs prior to the date they purchased the product with the intent that plaintiffs rely upon such misrepresentations about the safety of the subject crib bumper pad set.

153.   Plaintiffs did reasonably rely upon such misrepresentations about the safety of the subject crib bumper pad set.

154.    The representations Garan defendants made to plaintiff were false, and thereby
caused the injuries and damages to plaintiffs and their decedent as described above.

WHEREFORE, plaintiffs demand judgment for compensatory and punitive damages
against Garan defendants in an amount in excess of the jurisdictional limits of compulsory
arbitration, together with court costs, interest and such other and further relief as this Honorable
Court may deem just and equitable.

**COUNT XVIII**
*Plaintiffs v. Garan Defendants*
**Survival Action – Violation of Pennsylvania's Unfair Trade Practices and Consumer
Protection Law**

155.    All preceding paragraphs of this complaint are hereby incorporated by reference.

156.    By reason of the conduct as alleged herein, Garan defendants violated
Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-
1, *et seq.*, by engaging in fraudulent or deceptive conduct which creates a likelihood of confusion
or of misunderstanding.

157.    Garan defendants knowingly and intentionally induced plaintiffs to purchase the
subject crib bumper pad set through the use of false and/or misleading advertising,
representations and statements.

158.    The subject crib bumper pad set failed to perform as represented and advertised,
and in fact was unsafe.

159.    Garan defendants induced plaintiffs, through the use of false and/or misleading
advertising, representations, and statements, as described above to use and/or install the subject
crib bumper pad set in decedent's crib, which defendants manufactured and/or distributed and
sold, all in violation of the UTPCPL which proscribes, among other things:

a)   Engaging in unfair trade practices as defined in the statute by making false and misleading oral and written statements that have the capacity, tendency or effect of deceiving or misleading consumers;

b)   Engaging in unfair trade practices as defined in the statute by making representations that its' synthetic mesh systems had an approval, characteristic, use or benefit which it did not have, including but not limited to statements concerning the health consequences of the use of the synthetic mesh system;

c)   Engaging in unfair trade practices as defined in the statute by failing to state material facts, the omission of which deceive or tend to deceive, including but not limited to, facts relating to the health consequences of the use of these synthetic mesh systems; and

d)   Engaging in unfair trade practices as defined in the statute through deception, fraud, misrepresentation, and knowing concealment, suppression and omission of material facts with the intent that consumers rely upon the same in connection with the use and continued use of the synthetic mesh systems.

160.   As a direct and proximate result of Garan defendants' statutory violations, plaintiffs installed the subject crib bumper pad set into decedent's crib, which plaintiffs would not have done had Garan defendants not issued false and/or misleading advertising, representations and statements.

161.   By reason of such violations and pursuant to the laws and regulations of this state, plaintiffs are entitled to recover all of the monies paid for the products; to be compensated for the cost of medical care arising out of the use of subject crib bumper pad set; together with any and all actual damages recoverable under the law including, but not limited to, past medical expenses, past wage loss, past pain, suffering, disability and emotional distress.

162.    Garan defendants markets to the public in a manner calculated to increase sales of the subject crib bumper pad set and resultant profits from the product at the expense of, and in conscious disregard for, the health and safety of plaintiffs, decedent, and other patients alike, as safer and more effective alternative products existed.

163.    The conduct of Garan defendants was undertaken consciously and with notice, which evinces a willful, wanton and conscious disregard for the rights, health and safety of the public, including plaintiffs and decedent, who would be expected to be induced by that conduct, to use the subject crib bumper pad set leading to the suffocation death of decedent.

164.    As a direct and proximate result of the wrongful acts of Garan defendants, plaintiffs and decedent have suffered the injuries and damages as discussed above.

WHEREFORE, plaintiffs demand judgment for against Garan defendants in an amount in excess of the jurisdictional limits of compulsory arbitration, together with court costs, interest and such other and further relief as this Honorable Court may deem just and equitable.

## COUNT XIX
*Plaintiffs v. All Defendants*
**Survival Action -- Violation of Virginia Consumer Protection Act**

165.    All preceding paragraphs of this complaint are hereby incorporated by reference.

166.    By reason of the conduct as alleged herein, defendants violated Virginia Consumer Protection Act, VA Code Ann. § 59.1-196, et seq. by engaging in fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

167.    Defendants knowingly and intentionally induced plaintiffs to purchase the subject crib bumper pad set through the use of false and/or misleading advertising, representations and statements.

168.    The subject crib bumper pad set failed to perform as represented and advertised, and in fact was unsafe.

169.    Defendants induced plaintiffs, through the use of false and/or misleading advertising, representations, and statements, as described above to use and/or install the subject crib bumper pad set in decedent's crib, which defendants manufactured and/or distributed and sold, all in violation of the act which proscribes, among other things:

      a)    Engaging in unfair trade practices as defined in the statute by making false and misleading oral and written statements that have the capacity, tendency or effect of deceiving or misleading consumers;

      b)    Engaging in unfair trade practices as defined in the statute by making representations that its' synthetic mesh systems had an approval, characteristic, use or benefit which it did not have, including but not limited to statements concerning the health consequences of the use of the synthetic mesh system;

      c)    Engaging in unfair trade practices as defined in the statute by failing to state material facts, the omission of which deceive or tend to deceive, including but not limited to, facts relating to the health consequences of the use of these synthetic mesh systems; and

      d)    Engaging in unfair trade practices as defined in the statute through deception, fraud, misrepresentation, and knowing concealment, suppression and omission of material facts with the intent that consumers rely upon the same in connection with the use and continued use of the synthetic mesh systems.

170.    As a direct and proximate result of defendants statutory violations, plaintiffs installed the subject crib bumper pad set into decedent's crib, which plaintiffs would not have done had defendants not issued false and/or misleading advertising, representations and statements.

171.    By reason of such violations and pursuant to the laws and regulations of this state, plaintiffs are entitled to recover all of the monies paid for the products; to be compensated for the

cost of medical care arising out of the use of subject crib bumper pad set; together with any and all actual damages recoverable under the law including, but not limited to, past medical expenses, past wage loss, past pain, suffering, disability and emotional distress.

172.     Defendants markets to the public in a manner calculated to increase sales of the subject crib bumper pad set and resultant profits from the product at the expense of, and in conscious disregard for, the health and safety of plaintiffs, decedent, and other patients alike, as safer and more effective alternative products existed.

173.     The conduct of defendants was undertaken consciously and with notice, which evinces a willful, wanton and conscious disregard for the rights, health and safety of the public, including plaintiffs and decedent, who would be expected to be induced by that conduct, to use the subject crib bumper pad set leading to the suffocation death of decedent.

174.     As a direct and proximate result of the wrongful acts of defendants, plaintiffs and decedent have suffered the injuries and damages as discussed above.

WHEREFORE, plaintiffs demand judgment for against defendants in an amount in excess of the jurisdictional limits of compulsory arbitration, together with court costs, interest and such other and further relief as this Honorable Court may deem just and equitable.

### COUNT XX
*Plaintiffs, in their own right v. Defendant Wal-Mart*
**Wrongful Death**

175.     All preceding paragraphs of this complaint are incorporated herein by reference.

176.     As a direct and proximate result of the defendants Wal-Mart's negligence, carelessness and recklessness as described herein, plaintiffs Travis and Stefanie Micjan have suffered the following damages:

a)   They have been required to expend large amounts of money for decedent's funeral expenses;

b)   They have been and will be in the future deprived of the society, companionship, comfort, services, assistance and guidance of decedent;

c)   They have suffered mental anguish and solace due to the death of their infant son; and

d)   Other damages to be proven at trial.

WHEREFORE, plaintiffs demand judgment for compensatory and punitive damages against defendant Wal-Mart in an amount in excess of the jurisdictional limits of compulsory arbitration, together with court costs, interest and such other and further relief as this Honorable Court may deem just and equitable.

## COUNT XXI
### *Plaintiffs, in their own right v. Garan Defendants*
### Wrongful Death

177.   All preceding paragraphs of this complaint are incorporated herein by reference.

178.   As a direct and proximate result of the Garan defendants' negligence, carelessness and recklessness as described herein, plaintiffs Travis and Stefanie Micjan have suffered the following damages:

a)   They have been required to expend large amounts of money for decedent's funeral expenses;

b)   They have been and will be in the future deprived of the society, companionship, comfort, services, assistance and guidance of decedent;

c)   They have suffered mental anguish and solace due to the death of their infant son; and

d)   Other damages to be proven at trial.

WHEREFORE, plaintiffs demand judgment for compensatory and punitive damages against Garan defendants in an amount in excess of the jurisdictional limits of compulsory

arbitration, together with court costs, interest and such other and further relief as this Honorable

Court may deem just and equitable.

   **A JURY TRIAL IS DEMANDED.**

                              Respectfully submitted,


                              *s/Peter D. Friday, Esquire*
                              Peter D. Friday, Esquire
                              Attorney for Plaintiffs

## VERIFICATION

We, Travis Micjan and Stefanie Micjan, being duly sworn according to law, depose and say that the facts contained in the foregoing *Complaint in Civil Action* are true and correct to the best of our knowledge, information and belief.  We understand that false statements herein are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.


_____
TRAVIS MICJAN


_____
STEFANIE MICJAN

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on May 30, 2014 a true and correct copy of the foregoing *Complaint in Civil Action* was served by first class U.S. mail, postage prepaid, email and/or facsimile upon the following:

Mark R. Hamilton, Esquire
Rebecca Sember Izsak, Esquire
Cipriani & Werner
650 Washington Road
Suite 700
Pittsburgh, Pennsylvania 15228

Garan, Inc.
200 Madison Avenue
4th Floor
New York, New York 10016

Garan Services, Corp.
200 Madison Avenue
4th Floor
New York, New York 10016

*s/Peter D. Friday, Esquire*
Peter D. Friday, Esquire
Attorney for Plaintiffs