IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRAVIS MICJAN and STEPHANIE MICJAN, )<br>Co-administrators of the Estate of DYLAN )<br>MICJAN, a deceased minor and in their own right, )<br>         Plaintiffs, )<br>)<br>   vs )<br>)<br>WAL-MART STORES, INC., GARAN, INC., and )<br>GARAN SERVICES CORP., )<br>         Defendants. ) | Civil Action No. 14-855 |

MEMORANDUM AND ORDER

Presently before the Court is a partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendants Garan, Inc. and Garan Services Corp., seeking to dismiss five of the eleven claims asserted against them (Counts X, XI, XII, XV and XVIII) on the grounds that they are not cognizable under Virginia law. For the reasons that follow, the motion will be granted with respect to Counts X, XI, XII and XVIII and denied with respect to Count XV.

Plaintiffs, Travis Micjan and Stefanie Micjan,[1] co-administrators of the estate of Dylan Micjan, a deceased minor and in their own right, bring this action alleging various state common law and statutory tort claims against Defendants, Garan, Inc., and its subsidiary, Garan Services Corp. (together, the Garan Defendants) and Wal-Mart Stores, Inc. (Wal-Mart), arising out of the tragic death of their 3-month old son, Dylan Micjan, on March 25, 2012. Dylan died of asphyxia, which Plaintiffs contend resulted from Dylan rolling face first into a defective and dangerous crib bumper pad designed, manufactured, marketed, distributed and sold by Defendants.

---

[1] Although many of the documents submitted use the spelling "Stephanie," the Complaint and the Letters of Administration indicate that her name is spelled "Stefanie." (ECF No. 16-2.)

Facts

Dylan was born on December 14, 2011 and resided with his parents in Virginia. (Compl. ¶ 3.)[2] On November 15, 2011, Plaintiffs purchased a "Garanimals" crib bumper pad set, which had been manufactured, marketed and distributed by the Garan Defendants, at a Wal-Mart location in the Commonwealth of Virginia. (Compl. ¶¶ 12, 33.) The intended use of crib bumper pads is to wrap around the bottom perimeter of a crib, purportedly to prevent babies from becoming trapped between the slats of a crib and for cushioning the sides of the crib. (Compl. ¶ 14.)

Plaintiffs allege that the crib bumper pad did not contain any warnings against suffocation, even though Defendants knew or should have known that crib bumper pads have been found to cause more injuries and deaths in infants than they prevent, based on available data from the United States Consumer Product Safety Commission (CPSC) and an October 18, 2011 report on the website of the American Academy of Pediatrics that bumper pads should not be used in cribs. (Compl. ¶¶ 15-16, 18, 34.) Plaintiffs also note that the American Academy of Pediatrics warned against the use of crib bumper pads in its official journal "Pediatrics," based on two peer-reviewed articles, one published in the Journal of Pediatrics and the other published previously in "Pediatrics." (Compl. ¶¶ 19-20.) Health Canada, the CPSC, First Candle/National SIDS Alliance and the National Institute of Child Health & Human Development have also condemned crib bumper pad use, and the state of Maryland banned the sale of such items effective June 21, 2013. (Compl. ¶¶ 21-22.)

Plaintiffs installed the crib bumper pad set in Dylan's crib as directed by the instructions, which was the intended use of the product as manufactured. They provided Dylan with a firm

---

[2] Notice of Removal (ECF No. 1) Ex. D.

crib mattress, covered by a fitted sheet as recommended and provided by Defendants. The only warnings on the product were to position the ties outside the crib, remove the bumper when the child can sit up unaided and use a securely fitting crib sheet. (Compl. ¶¶ 35-37.) On the evening of March 24, 2012, Plaintiffs put Dylan to bed in his crib, at their home in Virginia which had the subject crib bumper pad set and a firm mattress with a tight-fitting crib sheet that was also included in the set. Dylan was behaving normally when he was put to bed and was considered by his parents to be a good sleeper with a steady sleep cycle. The door to the room was always left open. Between 4:00 and 5:00 a.m. on the morning of March 25, Stefanie Micjan fed Dylan, who was still behaving normally. (Compl. ¶¶ 39-41.)

At or about 11:30 a.m. on March 25, 2012, Travis Micjan checked on Dylan and found him to be unresponsive in his crib with his face pressed up against the subject crib bumper pad. Dylan was pronounced dead at the scene. Wendy M. Gunther, M.D., Medical Examiner for the Commonwealth of Virginia, performed an autopsy and determined that the cause of death was asphyxia due to Dylan's face rolling into the crib bumper pad. (Compl. ¶¶ 42-43.)

<u>Procedural History</u>

Plaintiff filed this action in the Court of Common Pleas of Allegheny County on May 30, 2014. The first nine claims are alleged on behalf of Dylan against Wal-Mart and then mirrored by claims ten through eighteen asserted against the Garan Defendants, as follows: strict liability for failure to warn (Counts I, X), strict liability for defective design (Counts II, XI), strict liability for a manufacturing defect (Counts III, XII), negligence (Counts IV, XIII), breach of express warranty (Counts V, XIV), breach of implied warranty (Counts VI, XV), fraud by concealment (Counts VII, XVI), negligent misrepresentation (Counts VIII, XVII), and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 to 201-9.3

3

(UTPCPL) (Counts IX, XVIII). Count XIX alleges that all Defendants violated the Virginia Consumer Protection Act, VA Code Ann. §§ 59.1-196 to 59.1-207. The final two counts assert wrongful death claims in Plaintiffs' own right against Wal-Mart (Count XX) and the Garan Defendants (Count XXI).

On June 30, 2014, Wal-Mart, with the consent of the Garan Defendants, removed the action to this Court on the basis of diversity jurisdiction in that: Plaintiffs are Pennsylvania citizens[3]; Garan, Inc. is a Virginia corporation with its principal place of business in New York, New York; Garan Services Corp. is a Delaware corporation with its principal place of business in New York, New York; Wal-Mart is a Delaware corporation with its principal place of business in Bentonville, Arkansas; and the amount in controversy, although not specifically alleged, very likely exceeds the sum of $75,000.00, exclusive of interest and costs, because it arises out of the death of an infant. 28 U.S.C. § 1332. (Notice of Removal ¶¶ 3-5, 9-13, 15 & Exs. F, G.)

On July 21, 2014, the Garan Defendants filed a partial motion to dismiss (ECF No. 8). Plaintiffs filed a brief in opposition on August 11, 2014 (ECF No. 16) and the Garan Defendants filed a reply brief on August 21, 2014 (ECF No. 20).[4]

Standard of Review

The Supreme Court has issued two decisions that pertain to the standard of review for a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.

---

[3] After Dylan's death, Plaintiffs moved to Elco in Washington County, Pennsylvania and opened an estate for Dylan on February 14, 2014 in Washington County. (Compl. ¶ 1; ECF No. 16 at 2 & Ex. B.)

[4] Wal-Mart filed an answer to the Complaint with cross-claims against the Garan Defendants. (ECF No. 10.) The Garan Defendants filed their answer to the cross-claims on August 11, 2014 (ECF No. 17).

662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 679. The Court of Appeals recently summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

The Garan Defendants argue that: 1) applying Pennsylvania choice of law principals, the laws of Virginia should be applied to this case; 2) Virginia law does not recognize strict liability claims and thus Counts X, XI and XII should be dismissed; 3) Plaintiffs allege that the Garan Defendants were merchants within the meaning of Article 2 of the Pennsylvania Uniform Commercial Code (U.C.C.), but since Virginia law applies, such designation is irrelevant and thus the breach of implied warranty claim in Count XV should be dismissed; and 4) Plaintiffs cannot state a claim under the UTPCPL under Virginia law, and thus Count XVIII should be

5

dismissed.

Plaintiffs respond that: 1) there is a false conflict between Pennsylvania and Virginia law regarding products liability tort cases and regarding damages; 2) even if there is a true conflict, Pennsylvania law must be applied because Pennsylvania has abandoned the strict "place of injury" rule and applies a more flexible rule that recognizes many factors, including the interest of a state in which the decedent's estate is being administered; and 3) the definition of "merchant" is the same under Virginia and Pennsylvania law, so the cause of action for breach of implied warranty is the same.

Rules Governing Choice of Law

"Because this is a diversity case, we apply the choice-of law-rules of the forum state, Pennsylvania." Hammersmith v. TIG Insurance Co., 480 F.3d 220, 226 (3d Cir. 2007) (citing Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)). The parties agree that Pennsylvania choice-of-law rules apply.

The Court of Appeals has held that:

> the first part of the choice of law inquiry is best understood as determining if there is an <u>actual</u> or real conflict between the potentially applicable laws.
>
> If there are relevant differences between the laws, then the court should examine the governmental policies underlying each law, and classify the conflict as a "true," "false," or an "unprovided-for" situation. A "deeper [choice of law] analysis" is necessary only if both jurisdictions' interests would be impaired by the application of the other's laws (i.e., there is a true conflict).

Id. at 230 (footnote and citations omitted). "Pennsylvania law recognizes strict products liability to protect its citizens from defective products and to encourage manufacturers to produce safe products." LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir. 1996). Virginia law, by contrast, does not recognize a cause of action for strict products liability. Harris v. T.I., Inc., 413 S.E.2d 605, 609-10 (Va. 1992). Applying Virginia law would impair Pennsylvania's interest in

6

protecting its citizens, the Micjans. LeJeune, id. On the other hand, Virginia's interests would be impaired if Pennsylvania law were applied as Virginia has an interest in prescribing the rules governing torts occurring within its borders. Id.

The courts of Pennsylvania have abandoned the strict lex loci delicti rule for tort actions in favor of an approach which combines the methodologies of an "interest analysis" and the "significant relationship" approach of the Restatement (Second) of Conflicts, § 145 (1971). Griffith v. United Air Lines, Inc., 203 A.2d 796 (Pa. 1964). A state's priority of interest in applying its rule of law will be evaluated by a determination of the contacts each state has with the accident, the contacts being relevant only if they relate to the "policies and interests underlying the particular issue before the court." Id. at 805. The weight of a state's contacts must be measured on a qualitative, rather than quantitative, scale. LeJeune, 85 F.3d at 1072 (citing Cipolla v. Shaposka, 267 A.2d 854, 856 (Pa. 1970)).

As summarized by the Court of Appeals:

> If a true conflict exists, the Court must then determine which state has the "greater interest in the application of its law." Cipolla, 267 A.2d at 856. In Melville [v. American Home Assurance Co.], we described the Griffith methodology as a combination of the "approaches of both [the] Restatement II (contacts establishing significant relationships) and 'interests analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy)." 584 F.2d [1306,] 1311 [(3d Cir. 1978)]. This analysis requires more than a "mere counting of contacts." Cipolla, 267 A.2d at 856. "Rather, we must weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the [particular] issue." Shields v. Consol. Rail Corp., 810 F.2d 397, 400 (3d Cir. 1987).

Hammersmith, 480 F.3d at 231 (footnote omitted).

Contacts to be evaluated are set forth in the Restatement (Second) of Conflicts (1971), in relevant part, as follows:

§ 145. The General Principal

7

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

- (a) the place where the injury occurred,

- (b) the place where the conduct causing the injury occurred,

- (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

- (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

§ 146. Personal Injuries

In an action for personal injuries, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to a particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

"Where the site of an accident is not fortuitous, the place of injury assumes much greater importance, and in some instances may be determinative." LeJeune, 85 F.3d at 1072 (citations omitted). In that case, the accident (the plaintiff was seriously injured when he was working on a piece of machinery and become caught in it) occurred in Delaware, along with much of the allegedly negligent conduct. The only contact with Pennsylvania was that, after the accident, the plaintiff moved to Pennsylvania. The court held that: "Delaware's contacts with the accident relate to substantive aspects of the case such as how and why certain conduct occurred. Pennsylvania's contact arises not from substantive matters in the litigation but rather from Mr. LeJeune's residence. Thus, we hold that Delaware law applies to this case." Id. See also Brown

v. Kia Motors Corp., 2009 WL 866846, at *12-13 (W.D. Pa. Mar. 30, 2009) (applying LeJeune to find that Virginia law applied when automobile accident occurred in Virginia and the only connection with Pennsylvania is that the plaintiff moved there after the accident); Shuder v. McDonald's Corp., 859 F.2d 266, 272 (3d Cir. 1988) (Virginia law applied when Pennsylvania resident traveled to Virginia and fell in McDonald's parking lot there, only contacts with Pennsylvania were that Mrs. Shuder lived in Pennsylvania and received medical treatment there); Conley v. Ethex Corp., 2012 WL 32445, at *10 (W.D. Pa. Jan. 5, 2012) (Virginia law applied in wrongful death action arising out of decedent's purchase of morphine sulfate tablets containing excessive dosage in Virginia, leading to her death in Virginia, and the only contact with Pennsylvania was that executor of estate lived there).

In Griffith, the site of injury was fortuitous because it arose out of a plane crash which occurred while the plane was flying over Colorado. Thus, Colorado had no interest in the matter. Pennsylvania, the domicile of the decedent and the place where the airline ticket was purchased, had a great interest and Pennsylvania law was applied. 203 A.2d at 807. Plaintiffs cite several other plane crash cases, in which the site of injury was fortuitous. Lacey v. Cessna Aircraft Co., 932 F.2d 170, 187 (3d Cir. 1991); Reyno v. Piper Aircraft Co., 630 F.2d 149, 168 (3d Cir. 1980), rev'd on other grounds, 454 U.S. 235 (1981).

In this case, however, the site of injury was not fortuitous: Plaintiffs bought the crib bumper pad in Virginia and installed it in their home there. Dylan was put in his crib with the bumper pad and that is where he sustained his fatal injury. The incident was investigated by the police in Suffolk, Virginia and the autopsy report was prepared by a pathologist in Virginia.

In this case, most of the § 145 factors counsel in favor of applying the law of Virginia.

The injury occurred in Virginia, Garan, Inc. is a Virginia corporation,[5] and Virginia is the place where the relationship between the parties, that is the Wal-Mart store where the crib bumper pad was purchased, was centered. Plaintiffs are Pennsylvania residents, but this single factor is outweighed by all of the other § 145 factors. In addition, the fact that the injury occurred in Virginia is a very significant indicator under § 146. See Laconis v. Burlington County Bridge Comm'n, 583 A.2d 1218, 1222-23 (Pa. Super. 1990) (Pennsylvania law applied when motorist was injured on bridge in Pennsylvania).

As noted above, all of the relevant Restatement sections should be consulted. This is a personal injury case, but Plaintiffs do not cite § 146 at all. They argue that Pennsylvania's abandonment of the strict "place of injury" rule means that the factor is completely without importance, but this argument is unsupported and directly contradicted by both § 145(2)(a) and § 146.

Therefore, the laws of Virginia should govern this action.

Counts X, XI, XII: Strict Liability Claims

In Counts X, XI and XII, Plaintiffs allege strict liability claims based on theories of failure to warn, defective design and manufacturing defect, respectively. The Garan Defendants move for dismissal of these claims because Virginia law does not recognize a cause of action in strict liability. They are correct: "Virginia law has not adopted § 402A of the Restatement (Second) of Torts and does not permit tort recovery on a strict-liability theory in products-liability cases." Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 374 S.E.2d 55, 57 n.4

---

[5] Plaintiffs contend that the Garan Defendants are both incorporated in New York, citing their Complaint (which does not actually contain an allegation regarding their state of incorporation). However, the Notice of Removal listed Garan, Inc.'s state of incorporation as Virginia and the Garan Defendants have produced a Virginia State Corporation Commission Business Entity Detail confirming this fact. (ECF No. 20 Ex. 1.)

(Va. 1988). Therefore, with respect to these claims, the motion to dismiss will be granted.

### Count XV: Breach of Implied Warranty

In Count XV, Plaintiffs allege a claim of breach of implied warranty. The Garan Defendants note that Plaintiffs contend that they were "merchants" within the meaning of Article 2 of the Pennsylvania U.C.C., but that such designation is irrelevant for purposes of Virginia law.

Plaintiffs respond that the Virginia U.C.C. contains the identical definition of the term "merchant," as follows:

> "Merchant" means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

VA Code Ann. § 8.2-104(1). Compare 13 Pa. C.S. § 2104. To the extent that Plaintiffs referred only to the Pennsylvania definition, the Complaint can be amended to refer to the identical Virginia definition. With respect to Count XV, the motion to dismiss will be denied.

### Count XVIII: UTPCPL Claim

In Count XVIII, Plaintiffs allege a claim against the Garan Defendants under the UTPCPL. Because Virginia law will apply to this case, Plaintiffs cannot proceed with a claim under the UTPCPL, which applies to purchases that affect the people of Pennsylvania, but Plaintiffs were not Pennsylvania residents at the time they purchased the product. 73 P.S. § 201-2. Plaintiffs have not responded to this argument. It is noted that they also allege a claim under Virginia's Consumer Protection Law which the Garan Defendants have not moved to dismiss. Therefore, with respect to Count XVIII, the motion to dismiss will be granted.

For these reasons, the motion to dismiss submitted on behalf of the Garan Defendants (ECF No. 5) will be granted with respect to Counts X, XI, XII and XVIII and denied with respect

to Count XV.

       An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TRAVIS MICJAN and STEPHANIE MICJAN, )
Co-administrators of the Estate of DYLAN )
MICJAN, a deceased minor and in their own right, )
       Plaintiffs, )
)
vs )   Civil Action No. 14-855
)
WAL-MART STORES, INC., GARAN, INC., and )
GARAN SERVICES CORP., )
       Defendants. )

## ORDER

AND NOW, this 2nd day of September, 2014,

IT IS HEREBY ORDERED that the partial motion to dismiss filed by Defendants Garan, Inc. and Garan Services Corp. (ECF No. 8) is granted with respect to Counts X, XI, XII and XVIII of the Complaint and denied with respect to Count XV.

IT IS FURTHER ORDERED that these Defendants file an answer to the Complaint by September 16, 2014.

                                              s/Robert C. Mitchell
                                              ROBERT C. MITCHELL
                                              United States Magistrate Judge