IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TRAVIS MICJAN and STEPHANIE MICJAN,  )
Co-administrators of the Estate of DYLAN  )
MICJAN, a deceased minor and in their own right,  )
    Plaintiffs,  )
           )
  vs  )  Civil Action No. 14-855
           )
WAL-MART STORES, INC., GARAN, INC., and  )  Magistrate Judge Mitchell
GARAN SERVICES CORP.,  )
    Defendants,  )
           )
  vs  )
           )
TRIBORO QUILT MANUFACTURING CORP.,  )
    Third-Party Defendant.  )

## MEMORANDUM OPINION AND ORDER

Presently before the Court is a motion for summary judgment, filed by Defendants Garan, Inc., and its subsidiary, Garan Services Corp. (together, "Garan"). For the reasons that follow, the motion will be granted in part and denied in part.

Plaintiffs, Travis Micjan and Stefanie Micjan,[1] co-administrators of the estate of Dylan Micjan, a deceased minor and in their own right, bring this action alleging various Virginia state common law and statutory tort claims against Garan and Wal-Mart Stores, Inc. (Wal-Mart), arising out of the tragic death of their 3-month old son, Dylan Micjan, on March 25, 2012. Dylan died of asphyxia, which Plaintiffs contend resulted from Dylan rolling face first into a defective and dangerous crib bumper pad that was manufactured by Third-Party Defendant Triboro Quilt Manufacturing Corp. (Triboro), licensed by Garan and sold by Wal-Mart. Defendants impleaded Triboro as a Third-Party Defendant to this action, although Wal-Mart

---

[1] Although some of the documents submitted, including the notice of removal (and hence the caption of the case) use the spelling "Stephanie," the Complaint and her deposition indicate that her name is spelled "Stefanie." (ECF No. 102-4.)

subsequently dismissed its Third-Party Complaint.

In the pending motion, Garan contends that Plaintiffs cannot maintain their remaining claims (for negligence, breach of express warranties, breach of implied warranties, fraud by concealment, negligent misrepresentation, wrongful death and violations of the Virginia Consumer Protection Act), primarily because it was neither the manufacturer nor the seller of the crib bumper pad, but rather only provided the license for Triboro to use its trademark on the product. For the reasons that follow, the motion will be granted with respect to the claims for breach of express warranties, fraud by concealment and the Virginia Consumer Protection Act, and denied with respect to the claims for negligence, breach of implied warranties, negligent misrepresentation, wrongful death and Plaintiffs' request for punitive damages.

Facts

Plaintiffs allege in their Complaint that Dylan "died of asphyxia after rolling [his] face into a crib bumper pad manufactured, distributed and sold by defendants." (Compl. ¶ 11.)[2] Plaintiffs indicate that Stefanie Micjan purchased the crib bumper pad at Wal-Mart's store located in Virginia in November 2011. (Compl. ¶ 33; Pls.' Resp. Wal-Mart Interrog. No. 3;[3] S. Micjan Dep. 36:20-23, 37:1-2.[4]) Plaintiffs state they did not purchase the crib bumper pad based on any advertisement. (Pls.' Resp. Wal-Mart Interrog. No. 4; S. Micjan Dep 40:21-41:8; T. Micjan Dep. 64:17-65:4.[5])

Plaintiffs state that Travis Micjan installed the crib bumper pad in Dylan's crib. (Pls.' Resp. Triboro Interrog. No. 7;[6] T. Micjan Dep. 68:2-4.)

---

[2] Garan Mot. Summ. J. (ECF No. 102) Ex. 1.
[3] ECF No. 102 Ex. 3.
[4] ECF No. 102 Ex. 4.
[5] ECF No. 102 Ex. 6.
[6] ECF No. 102 Ex. 5.

Plaintiffs note that the crib bumper pad at issue is labeled with the "GARANIMALS" logo – a registered trademark of Garan Services Corp. – in at least five (5) different places. (Pls.' App. Ex. 1.)[7] Garan has admitted that "GARANIMALS" is a registered trademark of Garan Services Corp. (Compl. ¶ 12; Garan Answer ¶ 12.) Triboro entered into a Trademark Licensing Agreement with Garan Services Corp. for the registered trademark "GARANIMALS." (Triboro Resp. Pls.' Interrog. No. 4; White Dep. 167:20-168:11.)[8]

Triboro has indicated that it designed the crib bumper pad, and that non-party, Nantong Heritage Home Textile Co. Ltd., located in China, manufactured the crib bumper pad. (Triboro Resp. Pls.' Interrog. Nos. 5, 13, 19.) Triboro's Corporate Representative, Richard White, testified that Garan had no involvement in Triboro's manufacturing of the crib bumper pad. (White Dep. 169:12-16.)[9] Similarly, Wal-Mart's Corporate Representative, Joseph Bussell, testified that Garan did not manufacture the crib bumper pad. (Bussell Dep. 55:14-22.)[10]

Wal-Mart states that any labels, warnings, brochures, manuals, and instructions would have been provided by Triboro. (Wal-Mart Resp. Pls.' Interrog. No. 10;[11] Bussell Dep. 132:3-133:7.)

Triboro states that it was the supplier of the crib bumper pad to Wal-Mart. (Triboro Resp. Pls.' Interrog. No. 6.)[12] Wal-Mart has a Supplier Agreement with Triboro. (Wal-Mart Resp. Pls.' Interrog. No. 7.) Wal-Mart states that it did not purchase, and was not otherwise provided, the crib bumper pad from Garan. (Id. No. 4.) Triboro states that it did not purchase, and was not

---

[7] ECF No. 107.
[8] ECF No. 102 Exs. 7, 8.
[9] Although Plaintiffs object that this is not what White said, it is an accurate citation from his deposition testimony.
[10] ECF No. 102 Ex. 9.
[11] ECF No. 102 Ex. 10.
[12] Plaintiffs deny this statement to the extent that it purports to make a legal conclusion.

otherwise provided, the crib bumper pad from Garan.  (Triboro Resp. Pls.' Interrog. No. 4.) Wal-Mart states that it sold the crib bumper pad in its stores. (Wal-Mart Resp. Pls.' Interrog. No. 6.)

Garan engaged two (2) third-party testing companies to perform testing on the subject product line in accordance with Wal-Mart and Consumer Product Safety Commission (CPSC) standards, prior to the date of Dylan Micjan's death. (Garan Resp. Pls.' First Set of Interrogs. No. 3.)[13]  Plaintiffs have provided test results that Gran received from Consumer Testing Laboratories ("CTL") and Bureau Veritas ("BV"), and have noted that none of testing regarded breathability or suffocation risk of the product. (Garan Resp. Pls.' Interrog. No. 12.)[14]

Garan also required its licensees (including Triboro) to periodically test the subject crib bumper pad line. (ECF No. 107 Ex. 2, No. 13.)  Plaintiffs note that Garan collected royalties of more than $240,000 in 2012 alone (the year Dylan Micjan died) from the sale of the subject line of crib bumper pads at Wal-Mart.  Over the lifetime of the product, Garan has collected millions of dollars in earned royalty income therefrom.  (ECF No. 107 Ex. 4.)

Robert Reda, Garan's corporate designee, testified, in pertinent part, as follows:

a. He "direct[s] all of the licensees for Garan" and has done so since 2008 (Reda Dep. 29).[15]

b. Wal-Mart recommended Triboro to Garan to be the manufacturer of the subject crib bumper pad line of products. (Id. at 34.)

c. He has a showroom for GARANIMALS products in Garan's offices in New York City. (Id. at 8, 36-37.)

d. The GARANIMALS brand is exclusive to Wal-Mart. (Id. at 39.)

e. He heard crib bumper pads create a suffocation risk to infants in 2011 or 2012. (Id. at 42.)

---

[13] ECF No. 107 Ex. 2.
[14] ECF No. 107 Ex. 3.
[15] ECF No. 115 Ex. 5.

f. Garan does their own safety testing of the subject bumper pad products independently of Wal-Mart and Triboro's testing "to ensure they are not putting anything out with their name on it that is not safe." (Id. at 51.)

g. He receives the test results from Lucretia Burton, a Garan employee from Mississippi. (Id. at 54.)

h. Garan wants "to have a say in what the product looks like on the floor at retail." (Id. at 58.)

i. He always had a relationship with Zoran Todorovic, the buyer of children's bedding at Wal-Mart. (Id. at 59.)

j. Garan has a showroom in Bentonville, Arkansas where Mr. Reda would meet with the buyer and each manufacturer (across the street from Wal-Mart's home office), and then determine, with Wal-Mart's representative, which manufacturer would be given the business. (Id. at 61-62, 125.)

k. When asked if Garan had a person in charge of product safety, Mr. Reda replied "[a]gain the name Lucretia Burton is involved in the testing of products." (Id. at 93.)

l. All of Garan's bedding items that are under the GARANIMALS brand would have a "GARANIMALS" label in the seam. (Id. at 101.)

m. He would meet with the Triboro creative team once or twice a year, which would include Donna Slaberhorn, the product designer, Darryl Farrell, the merchandiser, Richard White, the vice president of sales, and Joel Kaplan, the president and owner of Triboro. (Id. at 128.)

n. He also goes to Triboro's offices in White Plains, New York once or twice a year to review new designs and "do approvals." (Id. at 130.)[16]

Garan licensed the rights to sell the subject crib bumper pad with the "GARANIMALS" logo on it to Triboro by way of a Trademark License Agreement. (ECF No. 107 Ex. 7.)[17]  In section 2.3 of the Agreement, the parties agreed that the Licensee (Triboro) may not sell any "Licensed Merchandise" which is in any way defective without first removing or totally

---

[16] Garan points out that Reda's "approvals" were for the artwork only.  (Reda Dep. 32:1-33:22.)
[17] Garan denies the statements related to the Trademark License Agreement on the ground that they are not material.  (ECF No. 111 ¶ 4.)  However, this is a legal argument and, as discussed herein, the Agreement is relevant to the issues in this case.

obliterating all references to the GARANIMALS trademark. Section 3.1 of the Agreement requires that all merchandise and materials used must be "fit for their intended purpose," be at least equal to standards and specifications accepted by the licensor and be in accordance with applicable federal, state and local laws, rules, and regulations, including those of the CPSC. Section 3.1 also required that Triboro test each item and, upon request, provide the test results to Garan, while Garan also retained the right to test each item. Garan retained dozens of other rights related to the licensed product lines according to the Agreement.

Moreover, the Agreement requires that Triboro indemnify Garan and hold it harmless from any liability for which Garan may become liable "including, but not limited to, any action or claim relating to products liability . . ." <u>Id.</u> § 9.3A. Per the Agreement, Triboro was also required to procure and maintain a liability insurance policy "including products liability coverage with respect to the Licensed Merchandise . . .written for the benefit of [Garan], shall name Licensor and Garan as additional insureds . . ." <u>Id.</u> § 9.3B.

<u>Procedural History</u>

Plaintiff filed this action in the Court of Common Pleas of Allegheny County on May 30, 2014. The first nine claims were alleged on behalf of Dylan against Wal-Mart and then mirrored by claims ten through eighteen asserted against Garan, as follows: strict liability for failure to warn (Counts I, X), strict liability for defective design (Counts II, XI), strict liability for a manufacturing defect (Counts III, XII), negligence (Counts IV, XIII), breach of express warranty (Counts V, XIV), breach of implied warranty (Counts VI, XV), fraud by concealment (Counts VII, XVI), negligent misrepresentation (Counts VIII, XVII), and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 to 201-9.3 (UTPCPL) (Counts IX, XVIII). Count XIX alleged that all Defendants violated the Virginia Consumer

Protection Act, VA Code Ann. §§ 59.1-196 to 59.1-207 (VCPA). The final two counts asserted

wrongful death claims in Plaintiffs' own right against Wal-Mart (Count XX) and Garan (Count

XXI).

On June 30, 2014, Wal-Mart, with the consent of Garan, removed the action to this Court

on the basis of diversity jurisdiction in that: Plaintiffs are Pennsylvania citizens[18]; Garan, Inc. is a

Virginia corporation with its principal place of business in New York, New York; Garan

Services Corp. is a Delaware corporation with its principal place of business in New York, New

York; Wal-Mart is a Delaware corporation with its principal place of business in Bentonville,

Arkansas; and the amount in controversy, although not specifically alleged, very likely exceeds

the sum of $75,000.00, exclusive of interest and costs, because it arises out of the death of an

infant. 28 U.S.C. § 1332. (Notice of Removal ¶¶ 3-5, 9-13, 15 & Exs. F, G.)

On July 21, 2014, Garan filed a partial motion to dismiss (ECF No. 8). On September 2,

2014, the Court issued a Memorandum Opinion and Order which granted in part and denied in

part the motion to dismiss (ECF No. 22.) Specifically, the Court granted the motion with respect

to Counts X, XI, XII and XVIII and denied it with respect to Count XV on the ground that

Virginia law applies to this case and thus these Pennsylvania law causes of action (strict liability,

which is not recognized under Virginia law, and the UTPCPL, which is a Pennsylvania statutory

claim) should be dismissed.[19]

On September 11, 2014, Wal-Mart filed a motion for judgment on the pleadings, in

---

[18] After Dylan's death, in July of 2013, Plaintiffs moved to Elco in Washington County,
Pennsylvania and opened an estate for Dylan on February 14, 2014 in Washington County.
(Compl. ¶ 1; T. Micjan Dep. 12-13; ECF No. 16 at 2 & Ex. B.) In July 2014, the family moved
back to the house in Suffolk, Virginia, where they apparently still reside. (T. Micjan Dep. 14-
16.)
[19] Count XV, which alleged a claim of breach of implied warranty, was not dismissed because
Virginia recognizes the same claim under its codification of the U.C.C.

which it requested that the Court apply the law of the case to it and dismiss the corresponding claims for strict liability for failure to warn (Count I), strict liability for defective design (Count II), strict liability for a manufacturing defect (Count III) and violation of the UTPCPL (Count IX) on the ground that they are not cognizable under Virginia law. Plaintiffs did not oppose the motion and on November 4, 2014, a Memorandum Opinion and Order was entered granting Wal-Mart's partial motion for judgment on the pleadings and dismissing Counts I, II, III and IX (ECF No. 31).

On September 17, 2014, Garan filed a Third-Party Complaint against Triboro (ECF No. 26) and on September 23, 2014, Wal-Mart followed suit (ECF No. 28). However, on December 12, 2014, Wal-Mart stipulated to the dismissal of its claims against Triboro (ECF No. 41).

Thus, the remaining claims against Garan are: Count XIII (negligence), Count XIV (breach of express warranties), Count XV (breach of implied warranties), Count XVI (fraud by concealment), Count XVII (negligent misrepresentation), Count XIX (VCPA) and Count XXI (wrongful death). On March 22, 2016, Garan filed a motion for summary judgment (ECF No. 102) with respect to all of these claims. On May 12, 2016, Plaintiffs filed a brief in opposition (ECF No. 108). On May 31, 2016, Garan filed a reply brief (ECF No. 110). On July 7, 2016, Plaintiffs filed a sur-reply brief (ECF No. 118). On July 29, 2016, Garan submitted a supplement to its reply brief (ECF No. 121).

<u>Summary Judgment Standard of Review</u>

As amended effective December 1, 2010, the Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts

sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 266 (3d Cir. 2005); Doe v. County of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001).

Garan argues that: 1) under Virginia law, recovery on negligence claims is limited to manufacturers and sellers, not trademark or license owners, and since Triboro manufactured the crib bumper pad and put warnings on it and Wal-Mart sold it, Garan cannot be held liable; 2) Garan did not sell the crib bumper pad, so it cannot be held liable for Plaintiffs' claim for breach of express warranties; 3) the same analysis applies to Plaintiffs' claim for breach of implied warranties; 4) Plaintiffs' fraud claim should be dismissed because there is no evidence to support any of the six elements of this tort; 5) the negligent misrepresentation claim should be dismissed because Virginia recognizes no such tort and the evidence does not support a claim for constructive fraud; 6) the VCPA claim should be dismissed because Garan is not a "supplier" and there is no evidence of a knowing and deliberate failure not to disclose a material fact; 7) the

wrongful death claim should be dismissed because there is no evidence of negligence; 8) Plaintiffs' request for punitive damages should be dismissed because there is no evidence of willful, wanton or malicious conduct; and 9) if a negligent manufacture, design or warning claim remains against Garan, it should be dismissed because no expert testimony involves Garan in a design defect.

Plaintiffs respond that: 1) Garan can be held liable under the apparent manufacturer doctrine for placing its name all over the crib bumper pad, plus it engaged testing companies to check the product for CPSC compliance and required Triboro to periodically test it, Garan has a showroom inside Triboro's New York offices and the GARANIMALS product line is sold exclusively by Wal-Mart; 2); this same analysis applies to the implied warranty claims against the non-manufacturer of a product; 3) Garan falsely misrepresented to customers that the product was safe for its intended use in cribs; 4) the wrongful death claim can also be based on the apparent manufacturer doctrine; 5) the request for punitive damages is supported by evidence that Garan put its brand name and goodwill on the package; 6) the crib bumper pad was defective, as indicated by Plaintiffs' experts and even Garan sells another kind of crib bumper pad made with mesh, marketed as "safer" than the one at issue; and 7) the crib bumper pad is an unreasonably dangerous product, according to experts Dr. Gunther, Dr. Thach, Dr. Spitz and Mr. Kitzes, Garan's own corporate designee admitted being aware of crib bumper pad suffocation hazards in 2011 or 2012, and parents would have no way of knowing of the risk, which Garan failed to exercise due care about when it concealed this fact.[20]

In a reply brief, Garan argues that: 1) the apparent manufacturer doctrine has never been held to apply in Virginia (the old case that applied it predated the Erie case and used federal

---

[20] As explained below, Plaintiffs have not responded to all of Garan's arguments.

common law, which is no longer viable, and the recent case upon which Plaintiffs rely is not binding, was wrongly decided and is currently on appeal) and even if it did, it would still only extend to manufacturers and distributors, not trademark licensors; 2) under Virginia law, a manufacturer or seller of a defective product may be sued for breach of the implied warranty of merchantability or negligence, but Garan had no duties relative to this product (if it did, this would import a strict liability concept which Virginia law has rejected); and 3) neither the deposition testimony of Garan's corporate designee nor the Trademark License Agreement supports Plaintiffs' claims.

Determining State Law

The Court of Appeals has stated that:

> In adjudicating a case under state law, we are not free to impose our own view of what state law should be; rather, we are to apply existing state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us. Kowalsky v. Long Beach Township, 72 F.3d 385, 388 (3d Cir. 1995). In the absence of guidance from the state's highest court, we must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue. Wiley [v. State Farm Fire & Cas. Co.], 995 F.2d [457,] 459-60 [(3d Cir. 1993)]. We must also consider "analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." McGowan v. University of Scranton, 759 F.2d 287, 291 (3d Cir.1985) (quoting McKenna v. Ortho Pharmaceutical Corp., 622 F.2d 657, 663 (3d Cir. 1980)) (internal quotation marks omitted).

Koppers Co. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1445 (3d Cir. 1996).

Because this is a diversity action and the Court has already held that Virginia law applies, the Court must predict how the Virginia Supreme Court would rule if presented with this situation. This is an issue of law to be resolved by the court. Bohler-Uddehom America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 103 (3d Cir. 2001).

Count XIII: Negligence

In Count XIII, Plaintiffs allege a claim of negligence against Garan. Garan argues that such a claim can only be asserted against manufacturers and sellers of a defective product, and since it neither manufactured nor sold the crib bumper pad, but only licensed Triboro to use its trademark on the product, this claim must be dismissed. Plaintiffs cite the apparent manufacturer doctrine and Garan contends that Virginia law would not recognize it.

<u>Apparent Manufacturer Doctrine</u>

Plaintiff cites the recent case of <u>Bilenky v. Ryobi Technologies, Inc.</u>, 115 F. Supp. 3d 661 (E.D. Va. 2015), a case with facts similar to this one. In <u>Bilenky</u>, the plaintiff's decedent (Frank Wright) died as a result of a fire that started on his lawn tractor. The plaintiff sued Home Depot, which sold the tractor, and Ryobi, a company whose name was printed on the tractor and the owner's manual. The tractor was actually manufactured by Husqvarna, which was not named as a defendant in the action. The court stated that:

> Ryobi Technologies is a proper defendant because there was ample record evidence of Ryobi's involvement with the Wright tractor, and a reasonable jury was entitled to find that the name Ryobi associated the tractor with Ryobi Technologies. The jury heard evidence from both Mrs. Wright and Home Depot's corporate representative Timothy Seymour that the lawn tractor was branded by Ryobi. Further, the sales receipt that was given to Mr. Wright when he purchased the lawn tractor indicated that he purchased a Ryobi tractor. The jury saw portions of the owner's manual that listed the name Ryobi at the top. It is therefore reasonable that a juror could conclude based on the evidence presented that this was a Ryobi lawn tractor.

> The Court must now determine whether one's subjective understanding that a product was manufactured by a company can subject that company to liability. The Court finds that it can. The Restatement (Second) of Torts, § 400(c) subjects to liability, "[o]ne who puts out as his own product chattels made by others ..." Pursuant to the Restatement, one puts out a product in one of two circumstances. "The first is where the actor appears to be the manufacturer of the chattel. The second is where the chattel appears to have been made particularly for the actor. In the first type of case the actor frequently causes the chattel to be used in reliance upon his care in making it; in the second, he frequently causes the chattel to be used in reliance upon a belief that he has required it to be made properly for him and that the actor's reputation is an assurance to the user of the

quality of the product." Restatement (Second) of Torts § 400(d).

Defendant argues that the Restatement cuts in its favor because "the record contains no evidence that Ryobi Technologies had any involvement with the Wright tractor." ECF No. 191 at 13. In response, Plaintiff points to Swift & Co. v. Blackwell, a Fourth Circuit case from 1936, for the proposition that the key test in the apparent manufacturer doctrine is "whether an average reader would conclude from a perusal of the label that the goods were the product of the named defendant." ECF No. 196 at 6 (citing Swift & Co. v. Blackwell, 84 F.2d, 130, 132 (4th Cir.1936)). In Swift & Co., Plaintiff prevailed over defendant Swift & Co. in a negligence action even though the suspect milk container in question was not manufactured by Swift & Co. and the name "Swift & Co." appeared only once in small type on the side of the container. Id. The product was manufactured by Libby, McNeal, and Libby for Swift & Co., and the product's label included the name "Swift" eight separate times. Id. There, the Fourth Circuit held that because the products were manufactured for Swift & Co., and because the Swift name was readily apparent to the consumer, Swift & Co. held out the product as its own and had the responsibility of a manufacturer. Id. The Swift case is instructive, but it is neither as analogous as Plaintiff contends nor as dissimilar as Defendant contends. As a case that is currently good law in the Fourth Circuit, Swift stands for the proposition that district courts should look from the public's perspective to determine whether an entity "puts out" a product as its own such that it subjects itself to the same liability as a manufacturer.

The Fourth Circuit has similarly upheld the apparent manufacturer doctrine where entities put out products as their own in Smith v. Regina Manufacturing Corporation, 396 F.2d 826 (4th Cir. 1968). In Smith, the defendant was neither the designer nor manufacturer of defective floor polisher that was sold under the Smith defendant's trade name. Id. at 827. There the Fourth Circuit, citing Carney v. Sears Roebuck & Co., 309 F.2d 300 (4th Cir. 1962), and Swift & Co., 84 F.2d 130, held that a defendant warrants a product's merchantability and assumes the responsibilities of a manufacturer when it sells a product under its trade name. Id. at 828. Here, there was ample evidence in the record for the jury to similarly conclude that the name "Ryobi" on the Wright lawn tractor was a trade name used by Home Depot and Ryobi Technologies, Inc.

There is nothing in the Federal Rules, the laws of the United States, or the precedent of this Circuit that requires a jury to leave its common sense in the public corridors of the courthouse when it gathers to deliberate. This jury was presented with evidence that Mr. Wright purchased a tractor with the word "Ryobi" printed on its side, that he possessed an owner's manual with the name "Ryobi" printed on the top, and that his receipt was indeed for a Ryobi lawn tractor. Certainly Husqvarna was a manufacturer of the lawn tractor, and certainly Husqvarna is not a party to this action. It is also true that the lawn tractor was purchased at Home Depot. However, there is sufficient evidence in the record to support the jury's finding that Ryobi Technologies, Inc., put the Ryobi tractor out

as its own, and is therefore subject to liability under Virginia law.

Id. at 671-72.

Similarly, the evidence produced in this case indicates that Plaintiffs purchased a crib bumper pad with the name "GARANIMALS" printed on it in multiple places (ECF No. 107 Ex. 1), and Plaintiffs note that there was only place where the product was marked "manufactured for Triboro Quilt Mfg. Corp.," in small print, a notation which does not even indicate who actually manufactured the product.  This is enough evidence to place before the jury the question of whether Garan put the crib bumper pad out as its own and may therefore be subject to liability under Virginia law.

Garan argues that the Court should reject the Bilenky case for several reasons.  It contends that Bilenky is not binding on this Court, which is true, but it does represent appropriate authority for the Court to consider.  It contends that Bilenky is on appeal and may be reversed, but until this happens, the case remains good law.  Finally, it digs into the citations in Bilenky to argue that the prior cases were misapplied or are no longer applicable.  For example, it argues that the Swift case was based on federal common law, but since Erie Railroad v. Tompkins, 304 U.S. 64 (1938), federal courts no longer apply federal common law in diversity cases, but rather predict what the state law would be.  This is an accurate statement of the law, but as the Bilenky court noted, the holding in Swift is still good law and has been applied in subsequent cases long after the Erie case was decided and has never been overruled.  Garan points to no authority which holds that Virginia law would reject the apparent manufacturer doctrine and that a plaintiff cannot sue a company that "put out as its own" a product manufactured by another entity.[21]

---

[21] Garan also cites cases from other jurisdictions which reject or limit the apparent manufacturer doctrine.  See Automobile Ins. Co. of Hartford, Conn. v. Murray, Inc., 571 F. Supp. 2d 408, 422 (W.D.N.Y. 2008) (New York law); Iragorri v. United Tech. Corp., 285 F. Supp. 2d 230, 237 (D.

In addition, as Plaintiffs note, Garan's involvement in this product was not limited to licensing Triboro to put its trademark on it. Rather, Garan: 1) engaged two third-party testing companies to test the crib bumper pad in accordance with Wal-Mart and CPSC standards (Garan Resp. Pls.' Interrogs. ¶¶ 11-13, Testing Results[22]); 2) required its licensees (including Triboro) to periodically test the subject line of crib bumper pads; 3) acted on the recommendation of Wal-Mart to engage Triboro to be the manufacturer of the product (Reda Dep. 34); 4) performed its own testing "to ensure that they are not putting anything out with their name on it that is not safe" (Reda Dep. 51); 5) included in its Trademark License Agreement the requirement that Triboro not sell the product if it was in any was defective without first removing the GARANIMALS trademark (License Agreement § 2.3)[23]; and 5) required Triboro to indemnify and hold it harmless from any liability for which Garan may become liable, including claims for products liability, and for that reason Garan required Triboro to maintain liability insurance coverage (Id. § 9.3).

Thus, even if Garan's act of putting its name on the product was not sufficient, the record contains additional evidence of Garan's involvement in testing the product, requiring other

---

Conn. 2003); Ellis v. Dixie-Narco, Inc., 1999 WL 373793 (D. Ore. 1999); Yoder v. Honeywell, Inc., 104 F.3d 1215, 1223-24 (10th Cir. 1997) (Colorado law); Torres v. Goodyear Tire & Rubber Co., 867 F.2d 1234, 1236 (9th Cir. 1989) (Arizona law); Nelson v. International Paint Co., 734 F.2d 1084, 1087-90 (5th Cir. 1984) (Texas law). However, this Court must predict how the Virginia Supreme Court would decide this issue and these cases are not helpful in making that prediction in light of the authority cited in the text. Finally, Garan cites the Restatement (Third) of Torts: Product Liability § 14, comment d (1998), which limits the liability of trademarks owners to those who "participate substantially in the design, manufacture, or distribution of the licensee's products." However, Garan has provided no basis to conclude that Virginia would adopt the formulation of the Restatement Third. Indeed, Garan does not cite a single state that has adopted it. See Turner v. Lockheed Shipbuilding Co., 2013 WL 7144096, at *2 n.2 (W.D. Wash. Dec. 13, 2013) (noting that the Restatement (Third) has not been widely adopted).

[22] ECF No. 107 Exs. 2, 3.
[23] ECF No. 107 Ex. 7.

entities to test the product and seeking to limit its liability for defects in the product. Therefore, Garan's argument is rejected.

<u>Negligent Design Issues</u>

Garan argues that, if the Court concludes that it can be held liable for negligent manufacture, design and warnings of the crib bumper pad, Plaintiffs have failed to prove that the product was defective under Virginia law or that Garan breached any duties or was the proximate cause of Dylan's death. Plaintiffs respond that they have presented sufficient evidence to hold Garan liable.[24]

Dr. Wendy Gunther, the medical examiner who performed the autopsy on Dylan, concluded that the pathological diagnosis was "sudden unexpected infant death likely due to accidental suffocation in bumper pad." (Gunther Dep. 27; Autopsy Report at 1.)[25]

Plaintiffs' neonatology expert, Dr. Bradley Thach, was disclosed as an expert witness and authored a report in this matter. (ECF No. 107 Ex. 10.) Dr. Thach specializes in infant breathing disorders and accidental suffocation, in particular. He concluded the following, among other things, within a reasonable degree of medical certainty:

a. Studies have shown that "expired air is trapped in soft porous bedding and then is inspired. The inspired air has increased levels of [carbon dioxide] and reduced levels of oxygen. With continued breathing the levels of [carbon dioxide] inspired increases and levels of oxygen are further reduced. This process is termed 'rebreathing' and if this continues for three to four minutes, death can occur." (Id. at 3.)

---

[24] Initially, Plaintiffs cited only the reports of three of their experts, Dr. Thach, Dr. Spitz and Mr. Kitzes (ECF No. 107 ¶¶ 41-46 & Exs. 10-12), in addition to Dr. Gunther's autopsy report and deposition, which were already part of the record. Garan's reply materials contended that the reports could only be considered if they were accompanied by affidavits from the experts attesting to their accuracy (ECF No. 111 ¶ 5). In response, Plaintiffs submitted a sur-reply, which included affidavits from Dr. Thach, Dr. Spitz and Mr. Kitzes (ECF No. 118 Exs. A-1, A-2, A-3), as well as Mr. Kitzes' deposition (ECF No. 118 Ex. B).
[25] ECF No. 107 Exs. 8, 9.

b. "[A]ll traditional crib bumpers are inherently dangerous, as they pose a risk for fatal rebreathing when an infant's face is pressed into the bumper or his head is wedged between the bumper and another soft surface." (<u>Id.</u> at 4.)

c. "Dylan Micjan died from suffocation when his face was compressed against his crib bumper." (<u>Id.</u> at 4.)

d. "It is noteworthy that [Wal-Mart] advertise[s] a 'breathable baby crib bumper that reduces the risk of suffocation,' in their online catalog. This 'breathable' bumper was first advertised by Walmart in 2008. Therefore, in spite of allegations to the contrary, the company must have been aware of the suffocation hazard imposed by the traditional bumpers that they market." (<u>Id.</u> at 5.)

e. "[T]he cause of Dylan Micjan's death was suffocation due to close facial contact with a Walmart purchased bumper pad." (<u>Id.</u> at 6.)

Dr. Werner Spitz, forensic pathologist, was also disclosed as an expert witness and authored a report in this matter. (ECF No. 107 Ex. 11.) Dr. Spitz concluded the following, among other things, within a reasonable degree of medical certainty:

a. "Dr. Gunther ruled out that the linear white pressure mark could have been caused by the mattress rather than by the bumper pad." (<u>Id.</u> at 3 (citing Gunther Dep. 30-32)).

b. "The death here is no 'probable asphyxiation' but asphyxiation within a reasonable degree of medical and scientific certainty. In view of the way that the child was found, no other certification of the cause of death is appropriate and scientifically founded." (<u>Id.</u> at 3.)

William Kitzes, a Board Certified Product Safety Manager and Hazard Control Manager, was also disclosed as an expert witness for Plaintiffs in this matter. (ECF No. 107 Ex. 12.) Mr. Kitzes opined and/or concluded the following, among other things, within a reasonable degree of certainty in the areas of safety management, warnings and safety communications:

a. Wal-Mart failed to protect infant children from the catastrophic risk of suffocation injury and death associated with the foreseeable use of the subject GARANIMALS traditional polyester fiber bumper pads produced by Triboro Quilt Manufacturing Corporation exclusively for Wal-Mart. (<u>Id.</u> at 9.)

b. As early as May 8th of 2009, Wal-Mart was selling BreathableBaby – Breathable Safer Bumpers and promoting the fact that this mesh crib liner

"reduces the risk of suffocation." (Id. at 10.)

c. A 2007 article in the Journal of Pediatrics authored by Bradley T. Thach, M.D., George Rutherford, Jr. and Kathleen Harris titled "Deaths and Injuries Attributed to Infant Crib Bumper Pads" attributed 27 accidental deaths reported by medical examiners to bumper pads between 1985 and 2005, which included suffocation as a mechanism of death. The article also concluded that all retail bumpers had hazardous properties, and should not be used. (Id. at 12.)

d. Eleven (11) of the reported infant deaths studied in that article reported finding the infant with his/her face against the bumper. (Id.)

e. In another 2007 article from the Journal of Pediatrics, Rachel Y. Moon, M.D. wrote that the Canadian Paediatric Society and Health Canada issued recommendations in 2004 against using bumper pads out of concern that the softness could create a potential suffocation risk. (Id. at 13.)

f. In 2009, the Juvenile Products Manufacturers Association published an article titled "Safety Review of Infant Crib Bumper Pads" in which it wrote that bumper pads which are too soft may reduce the flow of fresh air leading to rebreathing of carbon dioxide and eventual injury or death. (Id. at 14-15.)

g. The 2009 article also included that one of the most critical parameters related to the safety of any item placed in an infant crib is "rebreathing" of already exhaled carbon dioxide. Breathable bumper pads, such as BreathableBaby, may provide adequate breathability after testing to address rebreathing. (Id.)

h. The CPSC White Paper titled "Unsafe Sleep Settings" by Suad Wanna-Nakamura (2010) reported that a search of 4 CPSC databases from 1990 to 2010 revealed a total of 52 infant deaths where bumper pads were mentioned, of which 28 were attributed to suffocation/positional asphyxiation and strangulation associated with bumper pads. (Id. at 16.)

i. In an email from Richard Williams of Triboro on June 24, 2011 with a subject of "6/22 Garanimals Meeting Recap", he wrote: "Bumpers – there is concern that bumpers will be outlawed by the CPSC, so Zoran [Wal-Mart's buyer], asked us to make an item/packaging proposal to separate the bumper from the 4 pc set. This should be done as soon as possible, so it can be shown and a decision made quickly." (Id. at 19.)

j. In an email to Richard White of Triboro, also on June 24, 2011, with a subject line reading, "Bumpers and Breathable Baby", the author wrote: "All this is leading him [Garan] to think he should be reaching out to Breathable Baby in case bumpers are outlawed by the CPSC." (Id.)

k. An article in the Chicago Tribune on September 9, 2011 reported that:

18

"[d]espite objections from the industry, Chicago on Thursday became the first city in the country to ban the sale of crib bumper pads due to concerns that the popular products pose a suffocation risk to babies." (Id. at 21.)

l. On October 18, 2011, the American Academy of Pediatrics ("AAP") issued a proclamation that bumper pads should not be used in cribs; there is no evidence that bumper pads prevent injuries, and there is a potential risk of suffocation, strangulation or entrapment. (Id.)

m. CNN reported the AAP proclamation on the same date. (Id. at 22.)

n. Triboro engaged Intertek in May 2013 to test the subject crib bumper pads against the "Fresh Air Crib Liner" – another product manufactured by Triboro and licensed by Garan – and the results showed that the total carbon dioxide was over six times higher in the Triboro traditional bumper. Further, according to Triboro's expert, Dr. Bill Fox, the subject Triboro bumper pad presents a low to moderate hazard for infants in a sleeping environment. (Id. at 23.)

o. The BreathableBaby Crib Liner won the 2008 "National Parenting Center Seal of Approval" and the 2008 "Parent Tested Parent Approved 'Best Product' Media Award." (Id. at 24.)

p. According to Wal-Mart's website on February 7, 2016, the BreathableBaby – Breathable Crib Liner "reduces the risks of suffocation . . ." (Id.)

q. Richard White, Triboro's corporate designee, testified that breathability is a benefit of the Fresh Air Crib Liner (also licensed by Garan with the GARANIMALS Trademark) which they started selling in 2011. (Id. at 31-32 (citing White Dep. 149-50.))[26]

r. Mr. Kitzes also noted in his report some customer reviews of the BreathableBaby – Breathable Crib Liner product which tends to show customer expectations with regard to crib liners and bumpers. (Id. at 25-27.)

s. Parents were not adequately warned about the risk of suffocation in the product – especially as compared to other products manufactured by Triboro, licensed by Garan and sold at Wal-Mart – which exposed minor plaintiff to an unreasonable risk of injury or death.

Under Virginia law:

The manufacturer of a chattel will be subject to liability when he

(a) knows or has reason to know that the chattel is or is likely to be dangerous for

---

[26] ECF No. 107 Ex. 13.

the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will
realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or
of the facts which make it likely to be dangerous.

Featherall v. Firestone Tire & Rubber Co., 252 S.E.2d 358, 366 (Va. 1979) (quoting Restatement

(Second) of Torts § 388 (1965)). Plaintiffs argue that: 1) they have presented evidence from 3

physicians who attributed Dylan's death to suffocation on the crib bumper pad (Gunther Dep. 27;

Autopsy Report at 1; Thach Report at 3-6; Spitz Report at 3) and a fourth expert who opined on

the availability of information to companies like Garan that these products were unreasonably

dangerous (Kitzes Report at 9-23), plus Garan did its own testing and its corporate designee

admitted that he heard that crib bumper pads presented a suffocation risk to infants as far back as

2011 or 2012 (Reda Dep. 41-42); 2) there would be no way for parents to know of this risk

themselves; and 3) because Garan failed to warn anyone of this risk, it failed to exercise

reasonable care to inform Plaintiffs of the product's dangerous condition or of the facts which

made it likely to be dangerous.

In a supplement filed on July 29, 2016 (ECF No. 121), Garan argues that the expert

reports do not demonstrate that it manufactured the product. But that was not the issue. Rather,

the experts opined that the product was unreasonably dangerous and the apparent manufacturer

doctrine provides the legal basis for holding Garan liable. The Court concludes that Plaintiffs

have presented sufficient evidence to present to the jury concerning Garan's liability. Therefore,

this argument is rejected.

For these reasons, with respect to Count XIII, the motion for summary judgment is

denied.

<u>Count XIV: Breach of Express Warranties</u>

In Count XIV, Plaintiffs allege a claim of breach of express warranties.  Garan moves to dismiss this claim on the ground that it was not a "seller" of the product.  Plaintiffs have not responded to this argument.

The Virginia Code on express warranties provides as follows:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Va. Code Ann. § 8.2-313.  Plaintiffs do not dispute that Garan was not a "seller" of the crib bumper pad.  Rather, as Garan indicates, Triboro sold the product to Wal-Mart, which then sold it in its stores to customers, including Plaintiffs in this case.  In addition, Triboro put the warnings on the package.  Therefore, Garan cannot be held liable for breach of express warranties and, with respect to Count XIV, the motion for summary judgment will be granted.

<u>Count XV: Breach of Implied Warranties</u>

In Count XV, Plaintiffs allege a claim of breach of implied warranties.  Garan moves to dismiss this claim on the ground that it was not a seller of the product.  Plaintiffs respond that liability on breach of implied warranties can extend to manufacturers and, as explained above,

the record is in dispute as to whether Garan was an apparent manufacturer of the product.

Unlike § 8.2-313 concerning express warranties, the section of Virginia law concerning implied warranties, Va. Code Ann. § 8.2-314, does not refer to "sellers." "Under Virginia law … manufacturers and sellers of defective products can be held liable on theories of negligence and breach of the implied warranty of merchantability." Bly v. Otis Elevator Co., 713 F.2d 1040, 1042 (4th Cir. 1983) (citations omitted). The court in Bilenky applied the same analysis to the plaintiff's implied warranty claims as to his negligence claims and allowed for liability against an apparent manufacturer. 115 F. Supp. 3d at 670. Therefore, for the reasons stated above with respect to Count XIII, the motion for summary judgment as to Count XV will be denied.

Count XVI: Fraud by Concealment

In Count XVI, Plaintiffs allege a claim for fraud by concealment. Garan moves to dismiss this claim on the ground that Plaintiffs fail to demonstrate that Garan satisfies any of the 6 elements of this claim. Plaintiffs have not responded to this argument.

"It is well-settled in Virginia that two elements are essential to a fraud claim: (i) a knowing misrepresentation or concealment of material fact, and (ii) reasonable and detrimental reliance on that misrepresentation or concealment." Torkie-Tork v. Wyeth, 739 F. Supp. 2d 895, 901 (E.D. Va. 2010) (citations omitted).

Under Virginia law:

A plaintiff asserting a cause of action for actual fraud bears the burden of proving by clear and convincing evidence the following elements: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled."

Richmond Metro. Auth. v. McDevitt St. Bovis, Inc., 507 S.E.2d 344, 346 (Va. 1998) (quoting Evaluation Research Corp. v. Alequin, 439 S.E.2d 387, 390 (Va. 1994)).

As Garan argues, Plaintiffs have pointed to no false misrepresentations made by Garan, much less any misrepresentations upon which they relied to their detriment. Therefore, with respect to Count XVI, the motion for summary judgment will be granted.

Count XVII: Negligent Misrepresentation

In Count XVII, Plaintiffs allege a claim of negligent misrepresentation. Garan argues that Virginia law does not recognize this tort and Plaintiffs cannot maintain a claim for constructive fraud either. Plaintiffs argue that there is sufficient evidence of constructive fraud.

Virginia law does not recognize a separate tort of negligent misrepresentation, but considers it to be the essence of constructive fraud. Constructive fraud requires proof, also by clear and convincing evidence, "that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of ... reliance upon the misrepresentation." Richmond Metro. Auth. v. McDevitt St. Bovis, Inc., 507 S.E.2d 344, 347 (Va. 1998) (quoting Mortarino v. Consultant Eng'g Serv., 467 S.E.2d 778, 782 (Va. 1996)).

Plaintiffs contend that, by placing its name on the product, Garan falsely represented to customers, including them, that traditional crib bumper pads were safe for use in cribs (even though it was aware of suffocation hazards), and it never informed customers of any potential suffocation risks. They argue that they relied on the fact that the crib bumper pad was marketed as safe for its intended use and that they were injured by relying on this fact when they used the bumper pad in Dylan's crib and he asphyxiated on it. Plaintiffs have pointed to sufficient evidence to maintain a claim for constructive fraud, and therefore with respect to Count XVII, the motion for summary judgment will be denied.

Count XIX: VCPA Claim

In Count XIX, Plaintiffs allege a claim under the VCPA. Garan argues that Plaintiffs

have not presented evidence of fraud and a knowing, deliberate decision not to disclose a material fact. Plaintiffs have not responded to this argument.

The VCPA prohibits certain "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Branin v. TMC Enterprises, LLC, 832 F. Supp. 2d 646, 650 (W.D. Va. 2011) (quoting Va. Code Ann. § 59.1-200)).

The VCPA defines a "consumer transaction" as the "advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes." Va. Code Ann. §59.1-198. A "supplier" is defined as a "seller, lessor or licensor who advertises, solicits or engages in consumer transaction, or a manufacturer, distributor or licensor who advertises and sells, leases or licenses goods or services to be resold, leased or sublicensed by other persons in consumer transactions." Id.

In Lambert v. Downtown Garage, Inc., 553 S.E.2d 714 (Va. 2001), the court held that a misrepresentation of fact was a necessary element of proof to the plaintiffs claim for fraud and a violation of the VCPA. Id. at 716. In Lambert, the plaintiff argued that the defendant's failure to disclose a material fact, i.e., the nature and full extent of the damages, constituted a misrepresentation in violation of the VCPA. However, the court held that, while the nondisclosure of a material fact, or misrepresentation by silence, may be the equivalent of a false representation, a violation of the VCPA "founded upon the nondisclosure of a material fact also requires evidence of a knowing and deliberate decision not to disclose the fact." Id. at 718. To maintain a VCPA claim based upon a fraudulent misrepresentation of fact, such an allegation "must contain the elements of fraud." See Jefferson v. Briner, Inc., 2006 WL 1720692, at *9 (E.D. Va. June 21, 2006) (citing Weiss v. Cassidy Dev. Corp., 63 Va. Cir. 76 (2003)).

As noted above with respect to Count XVI, Plaintiffs have not pointed to evidence to

support a fraud claim against Garan. Therefore, with respect to Count XIX, the motion for summary judgment will also be granted.

Count XXI: Wrongful Death

In Count XXI, Plaintiffs allege a claim for wrongful death. Garan argues that they have presented no evidence of negligence, proof that Garan manufactured or sold the crib bumper pad or that the crib bumper pad caused Dylan's death. Plaintiffs respond by citing to the apparent manufacturer doctrine and their experts' reports, which opine that the crib bumper pad was the likely cause of Dylan's death.

In order to prevail on a wrongful death claim, the plaintiff has the burden of proving that the particular time and manner of the decedent's death was the result of negligence on behalf of the defendant. See Blondel v. Hays, 403 S.E.2d 340, 344 (Va. 1991). As a prerequisite to liability, a defendant's negligence must have been the proximate cause of a decedent's death. See Blacka v. James, 139 S.E.2d 47, 50 (Va. 1964).

As cited above, Plaintiffs have presented sufficient evidence of negligence, have pointed to sufficient involvement by Garan (either under the apparent manufacturer doctrine or based upon Garan's additional testing of the product and other acts cited above) and have submitted expert reports linking the crib bumper pad to Dylan's death. Therefore, the wrongful death claim may be maintained and, with respect to Count XXI, the motion for summary judgment will be denied.

Punitive Damages

Plaintiffs have included punitive damages among their requests for relief. Garan argues that they have not submitted evidence that would support an award of punitive damages. Under Virginia law, punitive damages are recoverable "only where there is misconduct or

malice, or such recklessness or negligence as evinces a conscious disregard of the right of others." Boone v. Brown, 2013 WL 5416873, at *2 (W.D. Va. Sept. 26, 2013) (quoting Booth v. Robertson, 347 S.E.2d 1, 2 (Va. 1988)).  A plaintiff must show that the defendant was "conscious of his conduct, and conscious . . . that injury would likely or probably result from his conduct," and that the defendant "with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result." Id.

Garan argues that Plaintiffs present no evidence of any willful, wanton or malicious conduct on its part.  Plaintiffs respond that they have pointed to evidence that Garan became aware of the dangers of suffocation presented by the crib bumper pad, but chose to do nothing; that Garan tested the product, but not for breathability or suffocation risks; and that Garan required Triboro to indemnify it for any potential liability it might incur but is now attempting to avoid any responsibility for its actions and failures to act.

Garan has not cited authority indicating that punitive damages are unavailable in the kind of situation presented by Plaintiffs.  Neither have Plaintiffs cited authority indicating that such damages are available.  Under the circumstances, it is premature to conclude that punitive damages will be unavailable in this case.  Therefore, in this respect the motion for summary judgment will be denied.

In summary, for the reasons explained above, Garan's motion for summary judgment will be granted with respect to Counts XIV (breach of express warranties), XVI (fraud by concealment) and XIX (VCPA) of the Complaint, and denied with respect to Counts XIII (negligence), XV (breach of implied warranties), XVII (negligent misrepresentation) and XXI (wrongful death), and Plaintiffs' request for punitive damages.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TRAVIS MICJAN and STEPHANIE MICJAN,      )
Co-administrators of the Estate of DYLAN  )
MICJAN, a deceased minor and in their own right, )
               Plaintiffs,      )
                         )
        vs                   )        Civil Action No. 14-855
                         )
WAL-MART STORES, INC., GARAN, INC., and )
GARAN SERVICES CORP.,                     )
               Defendants,      )
                         )        Magistrate Judge Mitchell
        vs                   )
                         )
TRIBORO QUILT MANUFACTURING CORP.,       )
           Third-Party Defendant.      )

ORDER

     AND NOW, this 4th day of August, 2016,

     IT IS HEREBY ORDERED that the motion for summary judgment filed by Defendants

Garan Services Corp. and Garan, Inc. (ECF No. 102) is granted with respect to Counts XIV, XVI

and XIX of the Complaint and denied with respect to Counts XIII, XV, XVII and XXI and the

request for punitive damages.

                                 s/Robert C. Mitchell
                                 ROBERT C. MITCHELL
                                 United States Magistrate Judge